## STATE v. JACKSON D. McPHERSON.[1]

### June 9, 1911.

### Nos. 16,978—(19).

**Homicide — burden of proof — self defense.**

In homicide cases no burden rests upon the defendant to prove that the killing was justifiable, because done in self-defense; but the jury, to convict, must be satisfied beyond a reasonable doubt that the killing was not justifiable. In this case, *held* error to refuse defendant's request for an instruction to that effect.

**Charge to jury — duty to retreat when attacked.**

Defendant shot deceased in the bunk room of a steamboat, used by both as a sleeping room. *Held*, that an instruction that permitted the jury to find that defendant was bound, when attacked, to retreat through the door of the room, was incorrect as applied to the facts, and misleading.

**Improper argument.**

Certain remarks of the county attorney 'n his argument to the jury *held* improper.

Appeal by defendant from an order of the district court for St. Louis county, Ensign, J., denying his motion for a new trial after conviction of murder in the second degree. Reversed, and new trial granted.

*Warner E. Whipple,* for appellant.

*George T. Simpson,* Attorney General, *John H. Norton,* County Attorney, and *Warren E. Greene,* for the State.

BUNN, J.

Defendant was convicted of murder in the second degree, and appeals from an order refusing a new trial.

[1] Reported in 131 N. W. 645.

The homicide was admitted, and the sole question on the trial was whether it was justifiable. Defendant and Otto Frey, the deceased, were firemen on the steamboat North Lake, which was tied up to a dock in the Duluth harbor. They were friends and companions. Defendant shot Frey in the bunk room, where both slept. There was no eyewitness to the shooting, except defendant. The men had been drinking during the morning. Frey had become incensed at certain actions of defendant in a saloon where they were drinking, and had struck him, and called him vile names, but apparently defendant resented neither the blow nor the words. Frey returned to the boat. Defendant returned some time afterwards, and Frey continued his abusive language. Defendant ate his dinner in the mess room, and Frey went to the bunk room. Defendant went to the bunk room after he finished eating, found Frey in the room standing near the door, passed him, and went to his bunk. Shortly after this a shot was heard, and Frey was seen to step out of the bunk room through the door and to fall dead on the deck. The only evidence of what happened between defendant and Frey in the room is the evidence of defendant. It is not necessary to give defendant's story, further than to say that he claims that Frey attacked him, and that he finally shot in self-defense.

It is not argued that the evidence was not sufficient to sustain a conviction, but it does not appear conclusively from the evidence that the killing was not justifiable. If the jury believed defendant's story, there was certainly a reasonable doubt of his guilt. It is in this light that we must consider the errors complained of. The question was whether the killing was without justification. Defendant was entitled to have this question correctly and fairly presented to the jury. He was entitled to a dispassionate consideration of his case by the jury, under instructions that would not mislead them as to where the burden of proof was on the pivotal question, or as to the law of self-defense as applied to the evidence.

1. It is clearly the law that no burden rested on the defendant to prove that he acted in self-defense. The state claimed, and was obliged to prove, that the killing was not justifiable. Unless the jury were satisfied by the evidence beyond a reasonable doubt that the

killing was not justifiable it was their duty to acquit. Defendant's counsel, in accurate language, requested the court to so instruct the jury. This request was refused. The court charged that the state was required to prove defendant's guilt beyond a reasonable doubt, and that "the burden rests upon the state to satisfy you beyond reasonable doubt that all of the allegations of the indictment are true," but nowhere in the course of its elaborate charge in any other way gave the substance of the refused request. We have considered carefully the entire charge, and are not able to hold that the jury may not have understood that the burden of proof was on the defendant on the question of self-defense, the only controverted question in the case. It was error to refuse to give the instruction requested.

2. The court instructed the jury that the law required "the party killing to escape by retreat, unless prevented by some impediment or by the fierceness of the attack," and told the jury to consider whether the open door did not furnish an opportunity to retreat. This is an application of the strict "retreat to the wall doctrine" to a case where defendant (if his story is believed) was attacked in the room where he slept and kept his clothing, and when he was about as close to the "wall" as it was possible to get. The instruction permitted the jury to find that defendant should have managed to escape through the door. We think this instruction was incorrect as applied to the facts in this case, and that it may have misled the jury.

3. The county attorney, in his argument to the jury, in referring to a question of veracity between witness Gordon and defendant, said: "Who do you believe, Gordon or him—the scab that bought a revolver to shoot union sailors with?" This remark was improper, and was calculated to prejudice the jury; but we do not decide that it alone would require the granting of a new trial.

We conclude that, for the errors pointed out, defendant is entitled to a new trial.

Order reversed, and new trial granted. The warden of the state prison at Stillwater will deliver the defendant to the sheriff of the county of St. Louis, on his application, who will return him to the proper county for such trial.