STATE of Minnesota, Respondent,

v.

**Dana Kim COLUMBUS, Appellant.**

No. 47351.

Supreme Court of Minnesota.

Sept. 16, 1977.

Thomas G. Rowe and Donna Trethewey Nolan, St. Paul, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., Edward M. Laine, Special Asst. Atty. Gen., St. Paul, Wayne R. Farnberg, County Atty., Redwood Falls, for respondent.

Heard before TODD, YETKA and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal from a judgment of conviction entered upon a jury verdict finding defendant guilty of murder in the third degree, Minn.St. 609.195(2), and from an order denying a motion for a new trial.

On the evening of November 15, 1975, the following persons were together in a bar in Morton, Minnesota: Lester Dow (the decedent), his wife Marilyn, their 16-year-old son Martin, Dana Kim Columbus (the defendant), his sister Dixie Grundemoen, and her husband Rick Grundemoen. While at the bar Rick and Dixie had an argument, whereupon the bartender called the sheriff, who asked Rick to leave. Rick then unsuc-

cessfully attempted to get Dixie to go home with him; meanwhile, the others in the party decided to leave. Lester, Marilyn, and Martin got into Lester's car, and were joined before leaving by Dana and Dixie. Martin drove the car, Lester sat next to him, and the other three sat in the back seat.

On the way back to the Lower Sioux Reservation, Martin turned the car into a field because Lester thought Rick was following them. Having "lost" Rick, they proceeded to Dana's house. Dana said he was going to get his guitar, but returned instead with a rifle, which he said he would use to protect his sister Dixie from her husband Rick. Having placed the rifle on the shelf by the back seat, Dana got his guitar from the house and the group left for the city of Franklin.

The three in the back seat, Dixie, Marilyn, and Dana, began singing, and then Dana and Dixie argued over who was going to sing. Lester ordered Martin to stop the car for the purpose of putting all three of the back seat passengers out of the car. Martin did stop the car, but the singing continued. Dixie then leaned over the seat and grabbed a six-pack of beer sitting between Martin and Lester. Lester reached back to retrieve the beer, but Dixie put it behind her. As Lester continued to grab for the beer, Dana told him to leave his sister alone. Dana then took the rifle and got out of the car. He loaded the gun with some difficulty, pointed it at Lester, and told him to leave Dixie alone or he would shoot. Lester got out of the car and began walking toward Dana. Dana brought the gun to his shoulder as the two circled the car. Finally Lester said, "You better shoot now." Dana fired a single shot at Lester, causing the abdominal wound that later resulted in Lester's death.

At trial the defense admitted that Dana caused Lester's death, but attempted to justify Dana's act as being based upon self-defense or defense of others. The issue on appeal centers on the court's instructions to the jury on the burden of proving self-defense or defense of others. The instruction

in dispute was given at the close of the substantive aspects of the charge:

"Now, immediately after your retirement—well, I should say this, before I go into that. The burden of proving the self-defense aspect of the case is on the defendant. However, the overall burden of proof never shifts from the State by proving the guilt of the defendant beyond a reasonable doubt."

The only issue for consideration by this court is whether the jury instruction on self-defense, viewed in the context of the instructions as a whole and the record at trial, denied the defendant due process of law or a fair trial.

█ In Minnesota, the rule is that in homicide cases no burden rests upon the defendant to prove that he acted in self-defense. The burden of proof is upon the state to satisfy the jury beyond a reasonable doubt that the killing was not justifiable. *State v. McPherson*, 114 Minn. 498, 131 N.W. 645 (1911); *State v. McGrath*, 119 Minn. 321, 138 N.W. 310 (1912); *State v. Love*, 285 Minn. 444, 173 N.W.2d 423 (1970). The United States Supreme Court has held that this rule is mandated by the due process clause of the Fourteenth Amendment. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); see, also, *Hankerson v. North Carolina*, —— U.S. ——, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977). The defendant only has the burden of going forward with evidence to support his claim of self-defense. *State v. White*, 295 Minn. 217, 203 N.W.2d 852 (1973). The charge to the jury herein was therefore error, but whether the error requires reversal, absent a timely objection in the court below, must be determined by the facts of each particular case. In *State v. Love*, 285 Minn. 444, 451, 173 N.W.2d 423, 427, the following factors were considered:

" * * * Here the trial court merely omitted a direct statement concerning the burden of proof on the self-defense issue. As has been noted, there were complete instructions on self-defense and justification. We have held that a new trial cannot be granted unless it is shown that

the error was one of fundamental law or controlling principle and that it substantially and materially prejudiced the defendant's rights. The entire circumstances of this case; the failure to request such an instruction; the failure to object to the omission of such instruction; the clearness and comprehensiveness of the trial court's instruction; and the fact that the record as a whole supports the conviction compel the conclusion that the omission complained of did not deprive defendant of a fair trial."

In the instant case, defense counsel made no request concerning an instruction on self-defense prior to the time the instructions were given. A discussion in chambers on the burden of proof indicated that there was disagreement on the issue, and shows that both the prosecutor and the judge were in error. Defense counsel did not, however, propose or request a jury instruction on the issue.

Second, at the close of the charge, after the erroneous inclusion quoted above, defense counsel made no objection on any grounds.

Finally, the overall charge to the jury, while perhaps not "clear and comprehensive," was sufficient on all aspects of the case save the error discussed herein. The following excerpts demonstrate the adequacy of the charge regarding the state's burden of proof:

"The burden of proof in this case is the same as in all criminal cases. The burden of proof in every case is upon the party asserting a given fact or set of facts to be true, to prove such fact or set of facts by the requisite degree of proof, which in this case, it being a criminal case, is upon the State to prove the guilt of the defendant beyond a reasonable doubt.

\* \* \* \* \* \*

"There is [a] rule of law applicable in all criminal cases known as the presumption of innocence. Every person is presumed to be innocent of the crime of which he is accused. This presumption attaches to him at the very beginning of the proceedings against him and remains with him during the trial and until in fact it's overcome by proof of his guilt beyond a reasonable doubt. This rule applies to the defendant in this case, but no differently than in any other criminal case."

The charge also contained the following on the issue of self-defense:

"Now, the defendant has raised the defense of self-defense, and that is covered under section 609.06, subd.—or subparagraph 3, which has to do with authorized use of force. Reasonable force may be used upon or toward the person of another without his consent when the following circumstances exist or the actor reasonably believes them to exist. And then subparagraph 3 under that, when used by any person in resisting or aiding another to resist an offense against the person."

Taken as a whole, the charge was sufficient to impress upon the jury the "beyond a reasonable doubt" standard to the extent that the single erroneous sentence on self-defense would not have a major or controlling effect. In addition, the trial court erred only in stating that the defendant has the burden of "proof" rather than the burden of "going forward" with some evidence on the claim of self-defense. Whether this was prejudicial to an extent warranting reversal depends upon the nature of self-defense as a justification for the use of force or the taking of life, and the evidence supporting the claim of self-defense or defense of others in this case.

The use of force in self-defense or in defense of others is governed by Minn.St. 609.06(3) and 609.065(1). Minn.St. 609.06 reads in part:

"Reasonable force may be used upon or toward the person of another without his consent when the following circumstances exist or the actor reasonably believes them to exist:

\* \* \* \* \* \*

(3) When used by any person in resisting or aiding another to resist an offense against the person."

Minn.St. 609.065 provides in part:

"The intentional taking of the life of another is not authorized by section 609.-

06, except when necessary in the following cases:

(1) In resisting or preventing an offense which the actor reasonably believes exposes him or another to great bodily harm or death, * * *."

The court has established certain criteria to determine under what circumstances this defense is available. These factors are set out in *State v. Johnson*, 277 Minn. 368, 373, 152 N.W.2d 529, 532 (1967):

"It is a general rule that the legal excuse of self-defense is available only to those who act honestly and in good faith. The rule requires (1) the absence of aggression or provocation on the part of the slayer; (2) the actual and honest belief of the slayer that he was in imminent danger of death, great bodily harm, or some felony and it was necessary to take the action he did; (3) the existence of reasonable grounds for such belief; and (4) the duty of the slayer to retreat or avoid the danger if reasonably possible. 9 Dunnell, Dig. (3 ed.) § 4245; 40 C.J.S. Homicide, §§ 122 and 126; 41 C.J.S. Homicide, § 395, p. 229."

See, also, *State v. Baker*, 280 Minn. 518, 160 N.W.2d 240 (1968).

The evidence is overwhelming that none of these criteria are met in the present case. The defendant became the aggressor by drawing, loading, and aiming the rifle at Lester Dow; he did so while in no imminent danger of any kind (Lester Dow was unarmed); he had no reasonable grounds to believe either he or his sister was in imminent danger of great harm from Lester Dow; he made no attempt to avoid danger (for example, by turning the gun away from Dow), but instead fired at point-blank range. At the time the defendant fired he could not be said to be defending either himself or his sister, and in any event the use of deadly force was totally without reason.

As a matter of law justification was not available to the defendant under Minn.St. 609.06(3) and 609.065(1). For this reason, the erroneous aspect of the charge does not require reversal.

Affirmed.