STATE OF NORTH CAROLINA v. GEORGE WAYNE ROBERSON

No. 8715SC1039

(Filed 17 May 1988)

1. **Criminal Law § 169.2— murder—defendant's testimony—objections sustained —no motion to strike—no prejudice**

   There was no prejudice in a second degree murder prosecution from the court's sustaining an objection to defendant's testimony concerning a menacing statement made by unknown persons two weeks before the murder where the statement was not stricken from the record and the jury was not admonished not to consider it.

2. **Homicide § 21.8— murder—defense of habitation—motion to dismiss prosecution properly denied**

   The trial court in a second degree murder prosecution did not err by not dismissing the prosecution at the close of all the evidence where the evidence showed at most a vigorous pounding or kicking upon defendant's mobile home door by the victim and there was no evidence that the victim was armed or testimony that he attempted to force the door's lock or doorknob. The law of self-defense is irrelevant because deceased never gained entry into defendant's home, and the evidence did not establish defense of habitation as a matter of law.

3. **Homicide § 21.7— second degree murder—malice—evidence sufficient**

   The State's evidence in a prosecution for murder was sufficient to show malice where there was evidence from which the jury could infer that defendant knew who was at his door, knew why he was there, and intentionally and with malice fired his rifle.

4. **Homicide § 28.4— second degree murder—no instruction on imperfect defense of home—no error**

   The trial court did not err in a prosecution for second degree murder by refusing to instruct the jury on imperfect defense of home because North Carolina has not recognized imperfect defense of habitation and the instruction on the recognized defense of habitation rule was more favorable than the imperfect defense of habitation instruction to which defendant claimed he was entitled.

APPEAL by defendant from *Battle, F. Gordon, Judge*. Judgment entered 4 June 1987 in ALAMANCE County Superior Court. Heard in the Court of Appeals 30 March 1988.

The defendant was indicted on 9 March 1987 for the murder of Monte James Bradsher. The jury returned a verdict of guilty of second-degree murder, and the trial court sentenced defendant to ten years imprisonment.

The State's evidence tended to prove the following facts: In the early morning hours of 21 December 1986, Bobby Eugene Wilkerson and Pamela Albright drove Monte James Bradsher to the M & W Trailer Park on Highway 54 near Graham in Alamance County in order that Bradsher might pick up his girlfriend, Diane Geyer, who had been living with the defendant. According to Wilkerson's testimony, Bradsher first knocked on defendant's trailer door, then went to a nearby trailer to make inquiry. Upon returning from the second trailer, Bradsher told Wilkerson that a friend had told him that Ms. Geyer was asleep in the first trailer, defendant's. Bradsher then returned to defendant's trailer and resumed knocking, more loudly this time. A neighbor, Johnny Faucette, came out and spoke briefly with Bradsher. Then the latter returned to defendant's trailer and commenced knocking on the door a third time, this time quite loudly. Wilkerson heard Bradsher say a couple of times: "Wayne, come out. I need to talk to you. We need to talk." As Bradsher continued knocking, defendant fired one shot from his 6.5 caliber rifle through the lower left portion of his trailer door. Upon hearing a gunshot, Wilkerson and Albright departed without seeing what happened. Johnny Faucette ran back out, saw Bradsher run a short distance and then collapse. Detective Alan Cates testified that, upon arriving at the scene, he found Bradsher's body near a street light close to the first trailer on the right as one enters the trailer park. Dr. Carl T. Smedberg, the forensic pathologist who performed the autopsy, testified that Bradsher died from bleeding due to a gunshot wound.

Wilkerson and Albright both admitted on cross-examination that Bradsher had been hitting pretty hard on the trailer door. Detective Alan Cates, who investigated the scene of the shooting, testified that he found two pieces of the door lying two to three feet from the door inside the trailer.

The defendant took the witness stand in his own defense. He testified that Ms. Geyer had been staying with him because she had nowhere else to go, that he and Ms. Geyer had formerly been romantically involved, and that they had had a child together. He testified that when he heard a knock on the door, he asked who it was, got no response, and then said, "Well, go on, I've already gone to bed." In response, he heard, "I am going to kick this 'F' door down and coming in there to get . . . ." At the same time, he heard kicking, saw the door bowing in the middle, and the paneling coming off. The defendant testified that he did not know who was outside his door. Fearing for his life, he fetched his rifle and, in an attempt to frighten away whoever was at the door, fired one shot at the lower left corner of the door, under the impression that the person banging on his door was standing directly in front of it on the steps of the trailer.

Roberson further testified that approximately two weeks prior to the shooting incident, two males, identity unknown, had come to his trailer, had cursed, had made a menacing statement, and had kicked a panel out of his trailer door.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General J. Bruce McKinney, for the State.*

*Office of the Appellate Defender, by Assistant Appellate Defender Teresa A. McHugh, for defendant-appellant.*

WELLS, Judge.

The defendant brings forward five assignments of error. We overrule them all and find no error.

[1] By his first assignment of error defendant contends the trial court erred in sustaining an objection to defendant's testimony as to the above-mentioned menacing statement. This assignment is meritless. Defendant testified: "They were talking about whipping somebody's butt." Although the trial court sustained an objection to this testimony, apparently on hearsay grounds, the statement was not stricken from the record, nor was the jury admonished not to consider it. Thus, the statement was effectively before the jury, and the prosecutor's objection presumably only highlighted it. Under such circumstances, we find no prejudice to the defend-

ant in the court's ruling. *See State v. Britt*, 285 N.C. 256, 204 S.E. 2d 817 (1974).

[2]  By his second assignment the defendant contends that the trial court should have dismissed the prosecution at the close of all the evidence for insufficiency of evidence. This assignment is also meritless. In evaluating a motion to dismiss in a criminal case the court must consider the evidence in the light most favorable to the State and determine "whether there is substantial evidence of each element of the crime charged and of the defendant's perpetration of such crime." *State v. Bates*, 309 N.C. 528, 308 S.E. 2d 258 (1983).

Defendant argues that the evidence in the present case, considered in its best light, established defense of habitation and self-defense as a matter of law. However, the State's evidence showed that Bradsher made no threat of physical assault upon the defendant. At most, the evidence shows a vigorous pounding, or kicking, upon the mobile home door by Bradsher depending on whether one believes the State's witnesses or defendant's account. There was no evidence that Bradsher was armed nor any testimony that he attempted to force the door's lock or doorknob. A defense of habitation requires that an intruder try to force an entrance into a dwelling "in a manner such as would lead a *reasonably* prudent man to believe that the intruder intends to commit a felony or to inflict some serious personal injury upon the inmates." *State v. Miller*, 267 N.C. 409, 148 S.E. 2d 279 (1966) (emphasis added). The evidence presented in the present case does not establish that defendant acted in reasonable defense of habitation as a matter of law, and the trial court correctly concluded that the issue of the reasonableness of defendant's conduct was for the jury to decide. We find that the law of self-defense is irrelevant to the resolution of this case because the deceased never gained entry into defendant's home. Once an assailant gains entry into an occupied dwelling, the usual rules of self-defense replace the rules governing defense of habitation. *State v. McCombs*, 297 N.C. 151, 253 S.E. 2d 906 (1979).

[3]  Defendant further contends that the State's evidence, considered in its best light, failed to show evidence of malice, which is essential to a proof of second-degree murder. However, as stated above, Wilkerson testified that Bradsher called out a couple of

times, "Wayne, come out. I need to talk to you. We need to talk." Dixie Lee Bradsher, deceased's mother, testified that she had been to the M & W Trailer Park several times either to pick up or drop off Diane Geyer. The deceased's father testified that he had heard his son speak of the defendant as a friend of Ms. Geyer. As indicated above, there was no evidence that Bradsher assaulted or even threatened the defendant. Cumulatively, this was evidence from which, viewed in the light most favorable to the State, a jury might reasonably infer that defendant knew who was at his door, knew why he was there, and intentionally and with malice fired his rifle.

[4] By his fourth assignment, defendant contends that the court erred in refusing to instruct the jury on imperfect defense of home. We disagree. First, our State has not recognized imperfect defense of habitation as a principle of justification or exculpation, and we decline to recognize this defense in this case. Second, the instruction of imperfect defense of habitation to which defendant claims he was entitled is inconsistent with the recognized defense of habitation rule and is less favorable than the instruction actually given by the court. The court instructed on defense of habitation as follows:

> The defendant was justified in using deadly force only to prevent a forcible entry into his home and only if he reasonably believed that such force was necessary to prevent the entry and the circumstances at the time were such that he reasonably feared death or great bodily harm to himself or to other occupants of the home at the hands of the person seeking entry, or reasonably believed that such person intended to commit a felony in the home. It is for you, the jury, to determine the reasonableness of the defendant's apprehension or belief from the circumstances as they appeared to him at the time.

Defendant contends that the jury should have been charged additionally that if it found that defendant reasonably believed that it was necessary to act in defense of his home, but also found that he used excessive force, it must return a verdict of guilty of voluntary manslaughter. We hold, however, that the court properly instructed the jury to *acquit* the defendant if it should determine that defendant reasonably believed deadly force was

necessary under the circumstances. As our Supreme Court elaborated in *State v. McCombs, supra,* one justification for the defense of habitation rule is the need to afford protection to occupants of a dwelling under circumstances where there is no opportunity to see the intruder or clearly ascertain his purpose. Where an unknown assailant attempts to force entrance into a home, there is no duty to calibrate with the precision of 20/20 hindsight the lawful measure of force to repel. Any proof, or finding, of "excessive force" may be irrelevant and in any case will not vitiate, or render imperfect, a defense of habitation defense where the defendant reasonably believed that deadly force was necessary to protect himself or other occupants from serious injury, or reasonably believed that the intruder intended to commit a felony in the home.

We have carefully examined defendant's third and fifth assignments and find them to be without merit.

No error.

Judges PARKER and ORR concur.