**STATE of Minnesota, Respondent,**

v.

**Thomas Jerome McCUISTON, Appellant.**

No. C8–93–1378.

Court of Appeals of Minnesota.

April 12, 1994.

Review Denied June 15, 1994.

John M. Stuart, Public Defender, Bradford S. Delapena, Sp. Asst. Public Defender, St. Paul, and Stephen K. Warch, Rider, Bennett, Egan & Arundel, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Michael O. Freeman, Hennepin County Atty., Michael Richardson, Asst. County Atty., Minneapolis, for respondent.

## OPINION

SHORT, Judge.

Thomas McCuiston appeals from a judgment of conviction and sentence for second degree felony murder. Minn.Stat. § 609.-19(2) (1992). We reverse and remand for a new trial.

## FACTS

While standing in his porch doorway on a November evening, McCuiston shot a neighbor in the head at close range with a pistol grip shotgun. Earlier that evening, the victim's girlfriend telephoned the police because the victim was drunk, angry about money owed them by McCuiston, and talking about starting a fight with "this drug house across the street." McCuiston lived with his five-year-old son in the upstairs part of a triplex across the alley from the victim. There was a crack house on McCuiston's block, and McCuiston had purchased the shotgun to protect his son from crime in the neighborhood.

McCuiston claimed he shot the victim in self-defense. He was out walking with his son when the victim verbally accosted them, yelling racial epithets and threatening to chase McCuiston out of the neighborhood. McCuiston is a five foot, six inch tall, 126–pound African American; the victim was a six foot, one inch tall, 178–pound Caucasian. McCuiston gave his son the house keys and told him to run home. McCuiston continued to walk home with the victim yelling at him.

At his house, McCuiston climbed the stairs to the porch, entered, and locked the porch screen door. He was unable to lock the storm door because his son had the keys. McCuiston went upstairs to make certain his son was safe. When he heard someone pulling and kicking on the downstairs screen door, he grabbed his shotgun, walked downstairs, and called to his neighbor to telephone the police. McCuiston did not have a telephone at his residence.

On the porch, the shouting continued. The victim was yelling that he was not afraid of McCuiston; McCuiston was yelling for someone to call the police. McCuiston said he shot the victim as the victim made a gesture to enter McCuiston's house. The victim's outer jacket was found in McCuiston's front lawn.

A passerby witnessed the confrontation and testified at trial that (a) McCuiston was standing inside his doorway, holding the screen door open, and hollering for someone to call the police; (b) the victim approached McCuiston, touched McCuiston's shoulder, and retreated; (c) McCuiston raised his shotgun, but did not fire, and shouted for someone to call the police; (d) the victim continued to yell and gesture at McCuiston; and (e) as the victim again moved towards McCuiston in the doorway, McCuiston fired his shotgun.

McCuiston requested a modified self-defense instruction, which included language from both the statute and the pattern jury instruction authorizing deadly force to prevent the commission of a felony in a defendant's home. The trial court denied McCuiston's request, and gave a self-defense instruction excluding this "defense of dwelling" language. The jury acquitted McCuiston of second degree intentional murder, but found him guilty of second degree felony murder. The trial court sentenced McCuiston to an executed term of 180 months, an upward

departure of 30 months from the presumptive sentence. The court cited the victim's vulnerability due to intoxication as an aggravating factor supporting the departure.

## ISSUES

I. Did the trial court err in instructing the jury on the law of self-defense?

II. Did the trial court's instruction have a significant impact on the verdict?

## ANALYSIS

■ Defendants are entitled to an instruction on their theory of the case if there is evidence to support that theory. *State v. Ruud,* 259 N.W.2d 567, 578 (Minn.1977), *cert. denied,* 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978). A refusal to give a requested jury instruction lies within the discretion of the trial court. *State v. Daniels,* 361 N.W.2d 819, 831 (Minn.1985). An instruction need be given only if it is warranted by the facts and the relevant law. *Id.; State v. Sanford,* 450 N.W.2d 580, 586 (Minn.App.), *pet. for rev. granted* (Minn. Feb. 28, 1990), *order granting rev. vacated,* (Minn. Mar. 22, 1990). A trial court may tailor a proposed instruction to fit the facts and interpret criminal statutes in light of the common law. *See State v. Soto,* 378 N.W.2d 625, 627 (Minn. 1985) (common law rules of construction may be used to aid in construing penal statutes); *State v. Angulo,* 471 N.W.2d 570, 574 (Minn. App.) (self-defense instruction may be tailored to fit facts), *pet. for rev. denied* (Minn. Aug. 2, 1991). But a court should not alter a statutory defense merely because alternative language has appeared in judicial decisions. *See State v. Jolley,* 508 N.W.2d 770, 772 (Minn.1993) (rejecting expansion of statutory standard for mental illness defense).

### I.

McCuiston requested a jury instruction that combined the "defense of dwelling" language from the statute and pattern jury instruction with the conditions for self-defense set out in *State v. Boyce,* 284 Minn. 242, 254, 170 N.W.2d 104, 112 (1969). *See* Minn.Stat. § 609.065 (1992) (statute); 10 *Minnesota Practice,* CRIMJIG 7.05 (1990) (jury instructions). The trial court rejected McCuiston's

requested instruction and concluded the statutory language was superfluous in light of *Boyce.* We disagree.

Minn.Stat. § 609.065 provides:

> The intentional taking of the life of another is not authorized by section 609.06, except when necessary in resisting or preventing an offense which the actor reasonably believes exposes the actor or another to great bodily harm or death, *or preventing the commission of a felony in the actor's place of abode.*

(Emphasis added.) The pattern jury instruction similarly provides that self-defense includes "preventing the commission of the felony of [blank] in defendant's place of abode." 10 *Minnesota Practice,* CRIMJIG 7.05 (1990).

The supreme court said in *Boyce* that at least three conditions must occur to excuse homicide:

(1) The killing must have been done in the belief that it was necessary to avert death or great bodily harm.

(2) The judgment of the defendant as to the gravity of the peril to which he was exposed must have been reasonable under the circumstances.

(3) The defendant's election to kill must have been such as a reasonable man would have made in light of the danger to be apprehended.

*Boyce,* 284 Minn. at 254, 170 N.W.2d at 112. But there is no indication that the supreme court was attempting a comprehensive definition of self-defense. *See id.* ("At least three conditions must concur."). Neither the duty to retreat nor the absence of provocation are explicitly included in the *Boyce* conditions. Further, Boyce was not standing in his doorway and the shooting took place a distance from his apartment building. *Id.* at 248–52, 170 N.W.2d at 109–11. Under these circumstances, the *Boyce* holding does not eliminate from the law of self-defense the use of force in preventing the commission of a felony in the defendant's home.

■ The gravamen of McCuiston's defense was that the victim was about to force his way into McCuiston's house, not that the

victim was necessarily about to inflict death or great bodily harm on McCuiston. McCuiston testified as follows concerning his perceptions at the time he fired the fatal shot:

A. Then Mr. Fontaine [the victim]—I said—I told him—I tried to bluff him, I said, 'The police on their way, man. You better go home.' He said, 'F--- the police and f--- you black m----- f-----s and get the f--- out of my way.' And, when he said that, he came at me with both hands.

Q. Did you feel threatened at this point?

A. Yes, sir.

Q. Okay. Exactly how did you feel when you saw Mr. Fontaine coming at you?

A. I had a decision to make. I wasn't about to be no statistic or my child's life wasn't going to be put in danger. I had a decision to make. Either let him in my house for coffee and doughnuts or keep him from coming in.

The eyewitness' testimony placed the victim on McCuiston's porch during the confrontation which lead to the shooting. There was thus evidence to support the requested instruction and "defense of dwelling" was not already contained in the court's instructions. *See State v. Blasus*, 445 N.W.2d 535, 542 (Minn.1989) (party is entitled to instruction on its theory of the case if there is evidence to support it and its substance is not already contained in court's instructions).

▇ The trial court concluded that permitting deadly force to protect the commission of a felony in one's home would establish a "lower standard" for self-defense than set forth in *Boyce*. But the trial court's deletion of statutory language cannot be justified in light of common law principles because there is a "defense of habitation" at common law. *See State v. Miller*, 267 N.C. 409, 148 S.E.2d 279, 281 (1966) (a person may take the life of another who attempts to force an entrance into the person's house to commit a felony or inflict serious personal injury); 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 5.9 (West 1986) (same); Annotation, *Homicide or Assault in Defense of Habitation or Property*, 25 A.L.R. 508, 509 (1923) (same); 1 Paul H. Robinson, *Criminal Law Defenses* § 105(d) n. 15 (West 1984)

(listing section 609.065 as one among many state statutes recognizing defense of habitation). While courts may recognize common law defenses even though the legislature has not enacted them into statutory law, judges cannot eliminate a defense which the legislature has enacted. *See, e.g., State v. Johnson*, 289 Minn. 196, 201–02, 183 N.W.2d 541, 544–45 (1971) (necessity may be a general defense to criminal liability although not specifically provided for in statute); *cf. State v. Hanson*, 468 N.W.2d 77, 78–79 (Minn.App.) (common law defense of necessity should not be applied to possession of marijuana where legislature has specifically limited medical use of marijuana), *pet. for rev. denied* (Minn. June 3, 1991). *See generally* Rollin M. Perkins, *Self–Defense Re–Examined*, 1 U.C.L.A. L.Rev. 133, 161 (1954) (expressing preference that "no retreat" rule be abandoned by legislative rather than judicial decision).

The legislature chose to retain the "defense of dwelling" phrase, slightly modified, when it enacted the Criminal Code in 1963, despite the Advisory Committee's omission of the phrase from the proposed draft. *See* Minn.Stat.Ann. § 609.065, Maynard E. Pirsig cmt. (West 1987); *cf.* Minn.Stat. § 619.29(2) (1961) (repealed 1963) (providing, before enactment of Criminal Code, a privilege to use deadly force in resisting a felony "in a dwelling or other place of abode in which [the slayer] is"). The legislature made a policy judgment that persons should be able to claim self-defense in their own home even if their actions would not meet all the conditions of self-defense occurring elsewhere. The separation of powers doctrine prevents the trial court and us from substituting our own judgment for that of the legislature. *See State v. Thunberg*, 492 N.W.2d 534, 537 (Minn.1992) (trial court should not have departed from manslaughter statute using standard presumably considered and rejected by legislature).

The state strenuously argues that the "defense of dwelling" language is too broad and would allow a homeowner to use deadly force to prevent the commission of insurance fraud within the dwelling. As to the state's hypothetical, we disagree. Minn.Stat. § 609.065 must be read together with Minn.Stat.

§ 609.06, which defines when "reasonable force" may be used. *See* Minn.Stat. § 609.-065 (taking of a life not authorized under section 609.06, except in defined circumstances); Minn.Stat.Ann. § 609.065, cmt. (section 609.065 "operates as a limitation on" section 609.06). *See generally State v. McKown*, 475 N.W.2d 63, 65 (Minn.1991) (statutes which are in pari materia should be construed together), *cert. denied* —— U.S. ——, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992). The conditions listed in Minn.Stat. § 609.06 that justify the use of (non-deadly) force include resisting an offense against the person and resisting a trespass. Minn.Stat. § 609.06(3), (4) (1992). They do not include prevention of a crime of fraud, or other non-physical offense. Because no force would be authorized under Minn.Stat. § 609.06 to resist insurance fraud, deadly force would not be authorized under Minn.Stat. § 609.065 to resist the same offense.

■ We share, however, the state's concern with the breadth of the "defense of dwelling" language. The notion that a person may kill to prevent a felony inside the home may exceed what most people would think permissible under the law.[1] But it is not our role to debate the wisdom or parameters of the statutory language; our sole inquiry is whether McCuiston was entitled to an instruction on that statutory defense. We conclude, based on the facts, the statute, and common law principles, that McCuiston was entitled to an instruction on the use of deadly force to prevent the commission of a felony in his home.

## II.

■ McCuiston is entitled to a new trial unless it can be said beyond a reasonable doubt that the trial court's error in instructing on self-defense had no significant impact on the verdict. *State v. Olson*, 482 N.W.2d 212, 216 (Minn.1992). Under the trial court's instruction, the state had only to prove beyond a reasonable doubt that McCuiston did

not reasonably fear an assault involving death or great bodily harm at the time he fired the gun. The eyewitness testimony supported the state's case because it minimized the degree of threat posed by the victim. By contrast, under the requested instruction, the state would have to prove that the victim was not trying to force his way into McCuiston's house to commit a felony at the time he was shot. McCuiston testified that the victim was forcing his way into McCuiston's house to commit a felony. The eyewitness testimony did not contradict that point. Thus, the jury could have found that the victim was making a move to forcibly enter the house even though McCuiston was not threatened with death or great bodily harm.

Proof that the victim did not cross the threshold would not be fatal to McCuiston's defense. *See Miller*, 148 S.E.2d at 281–82 (defendant entitled to "defense of habitation" instruction although victim, who had ripped screen out of screen door, made no actual entry into house); *State v. Holder*, 237 Iowa 72, 20 N.W.2d 909, 913 (1945) (question whether defendant was acting in defense of habitation was for jury, although facts did not indicate victim had gotten past the front door); *cf. State v. Roberson*, 90 N.C.App. 219, 368 S.E.2d 3, 6–7 (1988) (assailant must actually enter dwelling for self-defense to apply, but "defense of habitation" requires only that there be an attempted forceful entrance), *pet. for rev. denied* (N.C. June 6, 1988). Under these circumstances, we conclude that the trial court's error in instructing the jury on self-defense was not harmless and requires a new trial. Because of our disposition on this issue, we need not reach the other issues raised by McCuiston's counsel or contained in his pro se supplemental brief.

## DECISION

The trial court erred in excluding part of the statutory language on self-defense from

---

1. We agree with the state that McCuiston's argument in this regard has shifted a bit on appeal. But we are obligated to decide cases based on the most complete review of all applicable authority. *See State v. Hannuksela*, 452 N.W.2d 668, 673 n. 7 (Minn.1990) (appellate court's re-sponsibility not diluted by counsel's omissions or lack of research). Because McCuiston objected to the self-defense instruction at trial based on the same omission challenged on appeal, he has not waived the issue.

its instruction to the jury. This error was not harmless and requires a new trial.

**Reversed and remanded for retrial.**