**STATE of Minnesota, Respondent,**

v.

**Tony Lamar CAROTHERS, Appellant.**

**No. C8-98-86.**

Court of Appeals of Minnesota.

Sept. 22, 1998.

Review Granted Oct. 29, 1998.

Hubert H. Humphrey III, Attorney General, St. Paul; and James Backstrom, Dakota County Attorney, Debra E. Schmidt, Assistant County Attorney, Hastings, for respondent.

John M. Stuart, State Public Defender, Mark F. Anderson, Assistant Public Defender, Minneapolis, for appellant.

Considered and decided by SHORT, P.J., and SCHUMACHER and DAVIES, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Tony Lamar Carothers was convicted of second-degree felony murder in violation of Minn.Stat. § 609.19, subd. 2(2) (1996). Carothers challenges the trial court's exclusion of defense evidence and its response to a question from the jury concerning the duty to retreat. We affirm.

## FACTS

The indictment charged Carothers with first-degree premeditated murder, second-degree intentional murder, second-degree felony murder and manslaughter in the first degree in the January 8, 1997 death of Kevin Lee in Apple Valley. Lee had been playing cards and drinking with Carothers, Carothers' girlfriend, Kayce Liebrecht, and others on the evening of the shooting. The socializing, as well as the later shooting, occurred in a mobile home owned by Kayce Liebrecht's mother, Karen Lindner. Carothers was living in the home at the time of the incident.

Carothers admitted that he fired the fatal shots, but claimed that he did so in self-defense, and in defense of the mobile home. The defense presented evidence that Lindner had asked Lee to leave the home, and that he had complied but had returned minutes later, entering without consent and approaching Carothers in a belligerent manner. The state presented evidence that Lee had returned peaceably, after knocking, for the sole purpose of using the telephone.

Carothers testified that Lee had said he was an "enforcer" for a gang, and for that reason alone Carothers was afraid of him. Carothers also testified that Lee had bragged about having put some members of another gang in the hospital. Carothers testified that Lee talked about carrying a gun, although he had never seen Lee in possession of one. The trial court ruled that the defense could not present evidence that Lee bragged that he was on the run after committing a murder, that he had robbed a 12–year–old boy, and that he had intimidated store clerks into letting him shoplift.

The trial court instructed the jury on self-defense and also on the defense of dwelling, an instruction given over the prosecutor's objection.

During its deliberations, the jury returned with two questions. After first requesting a legal definition of "place of abode," the jury sent the following question: "Does the self defense retreat [sic] duty of retreat apply to self defense causing death in place of abode?" The court, over a defense objection, responded as follows:

> The legal excuse of self defense is available only to those who act honestly and in good faith, even in one's place of abode. This includes the duty to retreat or avoid the danger if reasonably possible.

The jury acquitted Carothers of first-degree premeditated murder and second-degree intentional murder but found him guilty of second-degree felony murder and first-degree manslaughter. The trial court sen-

tenced him to the presumptive sentence of 165 months for second-degree felony murder.

## ISSUES

1. Did the trial court abuse its discretion in excluding defense evidence of prior bad acts by the victim?

2. Did the trial court err in instructing the jury that there is a duty to retreat within the dwelling?

## ANALYSIS

■ 1. Carothers argues that the trial court abused its discretion in excluding defense evidence offered to show Lee's propensity for violence. This court reviews an evidentiary ruling under an abuse of discretion standard. *State v. Kelly,* 435 N.W.2d 807, 813 (Minn.1989).

The defense presented ample evidence that Lee had boasted of acts of intimidation or violence, and of carrying a weapon, that he was belligerent on the night of the shooting, that he was far bigger than Carothers, and that both Carothers and Kayce Liebrecht were afraid of him. The trial court has discretion to exclude as cumulative even evidence that has significant probative value. *See* Minn. R. Evid. 403 (relevant evidence may be excluded if its probative value is substantially outweighed by the risk of "needless presentation of cumulative evidence"); *see also State v. Buchanan,* 431 N.W.2d 542, 551 (Minn.1988) (evidence of defendant's prior exposure to street violence was duplicative of other evidence supporting self-defense claim).

The exclusion of evidence that would have added only minimally to other defense evidence that Carothers was in reasonable apprehension that Lee would assault him was well within the trial court's discretion.

■ 2. Carothers argues that the trial court erred in instructing the jury that he had a duty to retreat before using deadly force to defend himself against Lee's commission of a felony in Carothers' dwelling. Although the trial court instructed the jury on the duty to retreat as part of its instructions on self-defense, Carothers focuses his argument on the court's response to a jury question during deliberations that asked whether the duty to retreat applies "to self defense causing death in place of abode."

■ The trial court generally has considerable latitude in selecting the language of jury instructions. *State v. Pendleton,* 567 N.W.2d 265, 268 (Minn.1997). But a jury instruction must not materially misstate the law. *Id.* Carothers argues that the trial court materially misstated the law by charging the jury that he had a duty to retreat even though he was defending against the commission of a felony in his dwelling, or place of abode.

There are four Minnesota cases in which a "duty to retreat" instruction was given although the act of self-defense occurred in the defendant's dwelling. In *State v. Sanders,* 376 N.W.2d 196, 198 (Minn.1985), the defendant claimed that the victim, with whom he had been socializing earlier, "came charging in" to his house, picked up a knife and said he was going to kill him. The trial court gave an instruction on the use of deadly force to prevent a felonious assault in the home, and applied to it a duty of retreat. *Id.* at 200–01. The defendant on appeal challenged another part of the self-defense instruction and conceded that the "duty to retreat" charge was appropriate. *Id.*

In *State v. Schluter,* 281 N.W.2d 174 (Minn.1979), three people entered the defendant's house unlawfully to "retrieve" some girls who had been attending a party there. One of the three was leaving peacefully when shot in the back. *Id.* at 176. The court held that the instruction on the duty to retreat was properly given. *Id.* at 177.

The supreme court also affirmed the giving of a duty to retreat instruction in *State v. Morrison,* 351 N.W.2d 359 (Minn.1984). In that case, the stabbing occurred in the defendant's home after the defendant had an argument with her boyfriend. But the boyfriend had left and the boyfriend's roommate had returned, apparently peaceably, when

> without warning [the defendant] grabbed a butcher knife and stabbed [the friend] in the side and in the back as his back was turned to her; * * * *.

*Id.* at 360. In approving the duty to retreat instruction, the court did not discuss the fact that the killing occurred in the defendant's home. *Id.* at 362.

Finally, this court has affirmed an instruction on the duty to retreat, even though the use of deadly force occurred in the defendant's home. *State v. Hennum,* 428 N.W.2d 859, 866–67 (Minn.App.1988), *aff'd in part, rev'd in part,* 441 N.W.2d 793 (Minn.1989). Although *Hennum* involved the killing of a spouse and co-occupant, a situation in which many jurisdictions would not apply the "castle doctrine" of no duty to retreat in the home, and although the defendant had waived the issue by failing to object, this court stated broadly that "Minnesota has retreated from this free-wheeling concept of self-defense" in which there was no duty to retreat in the home. *Id.* at 867. As authority, the court cited *Morrison* and *Sanders. Id.* The supreme court affirmed this court on the self-defense issue, without discussion. *Hennum,* 441 N.W.2d at 800, n. 5(1).

The principle that there is no duty to retreat inside one's home is generally termed the "castle doctrine." A majority, if not an overwhelming majority, of American jurisdictions have adopted it. *See Gainer v. State,* 40 Md.App. 382, 391 A.2d 856, 860–61 (1978) (stating that castle doctrine is "universally recognized exception" to duty to retreat), *cert. denied* (Md. Dec. 15, 1978); *cf. State v. Walton,* 615 A.2d 469, 471 (R.I.1992) (stating that a "majority of American jurisdictions" recognize the castle doctrine). Nevertheless, the four cases discussed above, although they do not acknowledge the castle doctrine or discuss the policies for or against it, do establish a line of Minnesota authority departing from the majority position and supporting the trial court's instruction in this case.[1]

Carothers contends, however, that the result should be different in this case because he asserted a "defense of dwelling" claim, rather than ordinary self-defense. Under the facts of this case, however, Carothers'

"defense of dwelling" claim is virtually the same as his self-defense claim. Carothers was not defending against a crossing of the threshold of the home, and was seeking to prevent the felony of assault directed, at least primarily, against his own person. *Cf. State v. McCuiston,* 514 N.W.2d 802, 804–06 (Minn.App.1994) (noting that defendant's claim that victim was attempting to force his way into defendant's home, to threaten defendant and his son, was not the same as self-defense claim, and entitled defendant to "defense of dwelling" instruction), *review denied* (Minn. June 15, 1994). It appears that the defendants in *Sanders, Schluter,* and *Morrison* would have had at least as strong a claim of "defense of dwelling" as Carothers.

The supreme court has held that a defendant claiming "defense of dwelling" need not show that he feared great bodily harm or death. *State v. Pendleton,* 567 N.W.2d at 268. The court, however, did not hold that the self-defense factors set out in *State v. Boyce,* 284 Minn. 242, 253, 170 N.W.2d 104, 112 (1969) are inapplicable to defense of dwelling. Instead, the court in *Pendleton* approved a "recasting of the *Boyce* factors in the context of a 'defense of dwelling' claim." *Id.* at 270. The duty to retreat is only a part of the duty of good faith recognized in *Boyce* as prerequisite to a valid claim of self-defense. *Boyce,* 284 Minn. at 253, 170 N.W.2d at 112 (citing *State v. Johnson,* 277 Minn. 368, 373, 152 N.W.2d 529, 532 (1967)). We do not read *Pendleton* as signaling an abandonment of the duty to retreat requirement in defense of dwelling cases, particularly in a case where the facts indicate only a defense of self within the dwelling, and certainly not when the victim has already been admitted to the home.

## DECISION

The trial court did not abuse its discretion in excluding cumulative defense evidence of prior bad acts by the victim. The court did

---

1. Carothers cites *State v. McPherson,* 114 Minn. 498, 131 N.W. 645 (1911), for the proposition that Minnesota does *not* impose a duty to retreat within the place of abode. But *McPherson* involved a co-occupant, a fellow seaman shot in the bunkroom he and the defendant shared, and discusses the issue in terms of the "retreat to the wall" doctrine, stating that defendant "was about as close to the 'wall' as it was possible to get." *Id.* at 500, 131 N.W. at 646. Thus, the case is distinguishable both legally and on its facts.

not err in instructing the jury that there is a duty to retreat inside the place of abode.

**Affirmed.**