ARROWOOD, Judge, dissenting.
I respectfully dissent. I would hold the trial court did not abuse its discretion in overruling defendant's objection to the portion of the State's closing argument that defendant argues, and the majority agrees, violated defendant's constitutional rights by allowing the State to argue the victim would not have been shot if he had been white. During closing argument, the State argued:
[THE STATE]: And while we're at it ... I have at every turn attempted to not make this what this case is about. And at every turn, jury selection, arguments, evidence, closing argument, there's been this undercurrent, right? What's the undercurrent? The undercurrent that the defendant brought up to you in his closing argument is what did he *270 mean by hoodlums? I never told you what he meant by hoodlums. I told you he meant the people outside. They presented the evidence that he's scared of these black males. And let's call it what it is. Let's talk about the elephant in the room.
[DEFENSE COUNSEL]: Objection.
THE COURT: Overruled.
[THE STATE]: Let's talk about the elephant in the room. If they want to go there, consider it. And why is it relevant for you? Because we talked about that self-defense issue, right, and reasonable fear. What is a reasonable fear? You get to determine what's reasonable. Ask yourself if Kourey Thomas and these people outside were a bunch of young, white males walking around wearing N.C. State hats, is he laying [sic ] dead bleeding in that yard?
[DEFENSE COUNSEL]: Objection.
THE COURT: Overruled.
[THE STATE]: Think about it. I'm not saying that's why he shot him, but it might've been a factor he was considering. You can decide that for yourself. You've heard all the evidence. Is it reasonable that he's afraid of them because they're a black male outside wearing a baseball cap that happens to be red? They want to make it a gang thing. The only evidence in this case about gangs is that nobody knows if anybody was in a gang. That's the evidence. They can paint it however they want to paint it, but you all swore and raised your hand when I asked you in jury selection if you would decide this case based on the evidence that you hear in the case, and that's the evidence. Now, reasonableness and that fear, a fear based out of hatred or a fear based out of race is not a reasonable fear, I would submit to you. That's just hatred. And I'm not saying that's what it is here, but you can consider that. And if that's what you think it was, then maybe it's not a reasonable fear.
Defendant contends these statements were improper because there was no evidence defendant was motivated by hatred or would have not shot the victim if he were white, and this argument is a ploy to encourage jurors to convict defendant based on passion.
*271 Our Court reviews alleged "improper closing arguments that provoke timely objection from opposing counsel" for "whether the trial court abused its discretion by failing to sustain *46 the objection." State v. Jones , 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002) (citations omitted). "[T]o assess whether a trial court has abused its discretion when deciding a particular matter, this Court must determine if the ruling could not have been the result of a reasoned decision." Id. (citation and internal quotation marks omitted).
"The Constitution prohibits racially biased prosecutorial arguments." McCleskey v. Kemp , 481 U.S. 279, 309 n. 30, 107 S.Ct. 1756, 1776 n. 30, 95 L.Ed.2d 262, 289 n. 30 (1987) (citation omitted). Therefore, although parties are generally "given wide latitude in their closing arguments to the jury," State v. Fletcher , 370 N.C. 313, 319, 807 S.E.2d 528, 534 (2017) (citation and internal quotation marks omitted), prosecutors cannot "make statements calculated to engender prejudice or incite passion against the defendant. Thus, overt appeals to racial prejudice, such as the use of racial slurs, are clearly impermissible." State v. Williams , 339 N.C. 1, 24, 452 S.E.2d 245, 259 (1994) (citations and internal quotation marks omitted), disapproved of on other grounds by State v. Warren , 347 N.C. 309, 492 S.E.2d 609 (1997). Prosecutors also may not "emphasize race, even in neutral terms, gratuitously." Id. (citations omitted).
However, a prosecutor may make "[n]onderogatory references to race ... if material to issues in the trial and sufficiently justified to warrant the risks inevitably taken when racial matters are injected into any important decision-making." Id. (citation and internal quotation marks omitted). As such, "argument acknowledging race as a motive or factor in a crime may be entirely appropriate." State v. Diehl , 353 N.C. 433, 436, 545 S.E.2d 185, 187 (2001) (citing State v. Moose , 310 N.C. 482, 492, 313 S.E.2d 507, 515 (1984) (holding there was sufficient evidence to support jury argument that murder was, at least in part, racially motivated where a white defendant used an ignoble racial slur to refer to a black victim, and evidence showed the victim was seen driving through a white community) ).
I would hold the court did not abuse its discretion in overruling defendant's objection to this portion of the State's closing argument.
Throughout defendant's trial, the State alleged defendant's motive was that defendant had a bad day and was "ticked off" and was not "going to take it anymore." The State brought up race for the first time in closing argument. These comments were brief, and not an appeal to racial animosity. Instead, the comments argued it would be unreasonable *272 to be afraid of the group outside the house because of race, and that race could have been a factor considered by defendant. Under the facts of this case, where the State's evidence showed a lone, agitated white defendant threatened a large group of black individuals, defendant alleged they referred to him as a "white boy," and then hid and waited, eventually shooting a young black man who entered the area along the curb of his yard, the trial court did not abuse its discretion in allowing the State's closing argument to acknowledge the potential for racial bias as a factor affecting the crime.
Although I disagree with the majority on this issue, I agree with its disapproval of the State's argument that equates gang membership with race. No evidence in the record supports this equivalency. I admonish the State to refrain from arguments that are unsupported by the evidence, but, rather, that play to offensive stereotypes.
Because I disagree with the majority's holding, I must discuss defendant's remaining arguments on appeal: (1) that the prosecutor misstated the law on the habitation defense twice during his closing argument; (2) that the trial court plainly erred by instructing the jury that the defense of habitation was not available if defendant was the aggressor; and (3) that the trial court erred by instructing the jury on the theory of lying in wait.
I. Closing Argument
Defendant argues the prosecutor misstated the law on the habitation defense twice during his closing argument. He did not object on this basis at trial. If opposing counsel fails to object to the closing argument at trial, we review alleged improper closing arguments for
whether the remarks were so grossly improper that the trial court committed reversible *47 error by failing to intervene ex mero motu . In other words, the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made.
Jones , 355 N.C. at 133, 558 S.E.2d at 107 (citation omitted).
First, defendant contends the State erred when it told the jury defendant could be found to be the aggressor if he left the second floor of *273 his house and went downstairs to the garage because this argument is contrary to State v. Kuhns , --- N.C. App. ----, 817 S.E.2d 828 (2018) and grossly prejudicial.
Defendant does not quote the language he refers to as egregious, and only provides a citation to a page in the transcript where the prosecutor discusses the aggressor doctrine. Upon review of the transcript, it is clear the references to the aggressor by the prosecutor in this portion of the transcript arose in the context of self-defense, not the habitation defense :
And I'm going to talk more about some of the things that he told you later, but what I want to get to is this excused killing by self-defense , okay?
....
He doesn't have to retreat from his home, but if you're upstairs and somebody makes a show of force at you, it's not retreating to stay upstairs. It's, in fact, the opposite of that, right? But if you take your loaded shotgun and go down to the garage and if you buy him at his word, which I don't know that you can, you are not retreating. You are being aggressive. You're continuing your aggressive nature in that case.
(Emphasis added). Therefore, defendant's argument that the trial court erred by failing to intervene when the State misstated the law on the habitation defense is without merit.
Second, defendant argues the State incorrectly added exceptions to the habitation defense that our statutes only permit as exceptions to self-defense. Defendant maintains the State committed this error in the following portion of its argument:
And I'm going to talk more about some of the things that he told you later, but what I want to get to is this excused killing by self-defense , okay?
....
You can consider the size, age, strength of defendant as compared to the victim. ... You've got somebody who's standing at this point in a yard and you've got somebody on a second floor window. How much danger is he to him at that point? Especially at that point, he's not even saying *274 they're pointing a gun at him. All they've done is this - (indicating) - if you buy him at his word.
....
Reputation for violence, if any, of the victim, you didn't hear that he was a violent guy. You didn't hear that he was a gangbanger. All you heard is that he was actually the opposite of that, right?
(Emphasis added). I disagree. As with defendant's first argument, this portion of the transcript refers to self-defense, not the habitation defense. I would hold defendant's argument is without merit.
II. Habitation Defense
Next, defendant argues the trial court plainly erred by instructing the jury that the habitation defense was not available if defendant was the aggressor.
Defendant alleges plain error because he did not object on this basis at trial. N.C.R. App. P. 10(a)(2), (a)(4) (2019). To demonstrate the trial court plainly erred, defendant "must show that the instructions were erroneous and that absent the erroneous instructions, a jury probably would have returned a different verdict. The error must be so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against him." State v. Tirado , 358 N.C. 551, 574, 599 S.E.2d 515, 531-32 (2004) (citations and internal quotation marks omitted).
*48 Our statutes provide for the defense of habitation, in pertinent part, as follows:
The lawful occupant of a home ... is presumed to have held a reasonable fear of imminent death or serious bodily harm to himself or herself or another when using defensive force that is intended or likely to cause death or serious bodily harm to another if both of the following apply:
(1) The person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, a home ... or if that person had removed or was attempting to remove another against that person's will from the home. ...
(2) The person who uses defensive force knew or had reason to believe that an unlawful and forcible *275 entry or unlawful and forcible act was occurring or had occurred.
N.C. Gen. Stat. § 14-51.2(b) (2017). Any "person who unlawfully and by force enters or attempts to enter a person's home ... is presumed to be doing so with the intent to commit an unlawful act involving force or violence." Id. § 14-51.2(d).
Distinct from the defense of habitation, the General Assembly set out the requirements for self-defense in N.C. Gen. Stat. § 14-51.3 (2017). Both the defense of habitation and self-defense are "not available to a person who used defensive force and who ... [i]nitially provokes the use of force against himself or herself" unless either of the following occur:
a. The force used by the person who was provoked is so serious that the person using defensive force reasonably believes that he or she was in imminent danger of death or serious bodily harm, the person using defensive force had no reasonable means to retreat, and the use of force which is likely to cause death or serious bodily harm to the person who was provoked was the only way to escape the danger.
b. The person who used defensive force withdraws, in good faith, from physical contact with the person who was provoked, and indicates clearly that he or she desires to withdraw and terminate the use of force, but the person who was provoked continues or resumes the use of force.
Id. § 14-51.4 (2017) (emphasis added).
Here, the trial court instructed the jury in conformity with Pattern Jury Instruction 308.80 of the North Carolina Pattern Jury Instructions, and included an instruction on provocation that conformed with N.C. Gen. Stat. § 14-51.4 as follows:
The State has the burden of proving from the evidence beyond a reasonable doubt that the defendant did not act in the lawful defense of the defendant's home. The defendant is justified in using deadly force in this matter if, and there are four things. Number one, such force was being used to prevent the forcible entry into the defendant's home, and, two, the defendant reasonably believed that the intruder would kill or inflict serious bodily harm *276 to the defendant or others in the home, or intended to commit a felony in the home, and, three, the defendant reasonably believed that the degree of force the defendant used was necessary to prevent a forcible entry into the defendant's home, and, four, the defendant did not initially provoke the use of force against himself, or if the defendant did provoke the use of force, the force used by the person provoked was so serious that the defendant reasonably believed that he was in imminent danger of death or serious bodily harm, and the use of force likely to cause death or serious bodily harm to the person who was provoked was the only way to escape the danger.
(Emphasis added). Thus, the trial court did not reference defendant as an "aggressor" while instructing on the defense of habitation. However, once the trial court completed its instruction on the habitation defense, it referenced defendant as an "aggressor" when it gave the self-defense instruction.
The defendant would not be guilty of any murder or manslaughter if the defendant acted in self-defense and if the defendant was not the aggressor in provoking the fight and did not use excessive force under *49 the circumstances. One enters a fight voluntarily if one uses towards one's opponent abusive language, which, considering all of the circumstances, is calculated and intended to provoke a fight. If the defendant voluntarily and without provocation entered the fight, the defendant would be considered the aggressor unless the defendant thereafter attempted to abandon the fight and gave notice to the deceased that the defendant was doing so. In other words, a person who uses defensive force is justified if the person withdraws in good faith from physical contact with the person who was provoked and indicates clearly that he decides to withdraw and terminate the use of force but the person who was provoked continues or resumes the use of force. ...
(Emphasis added).
Defendant's brief fails to identify the direct quotation or contested instruction wherein the trial court instructed the defense of habitation is unavailable to an aggressor , and we have not found such an instruction. Instead, the trial court instructed that the defense of habitation is unavailable to a defendant who initially provokes the use of force *277 against himself, and that self-defense is unavailable when a defendant is an aggressor in provoking the fight . Thus, defendant's argument misconstrues the jury instructions.
Nonetheless, defendant argues the jury would not have understood the aggressor doctrine to be applicable to the habitation defense merely because the self-defense instruction occurred after the habitation defense.
I disagree and decline to conflate these defenses, as the statutory scheme of our General Assembly and the decisions of this Court have distinguished the defense of habitation and self-defense. Compare N.C. Gen. Stat. § 14-51.2 with N.C. Gen. Stat. § 14-51.3 ; see State v. Roberson , 90 N.C. App. 219, 222, 368 S.E.2d 3, 6 (1988) (distinguishing the rules of the defense of habitation from the rules of self-defense). Moreover, although N.C. Gen. Stat. § 14-51.4 states that neither defense may be utilized where a defendant provoked the use of force, our decisions have only referred to a defendant's status as an "aggressor" with regard to self-defense, and has never applied this language to the defense of habitation.
I also disagree that the jury would have confused these instructions, as our Court must presume the jury "attend[s] closely the particular language of the trial court's instructions in a criminal case and strive[s] to understand, make sense of, and follow the instructions given them." State v. Wirt , --- N.C. App. ----, ----, 822 S.E.2d 668, 674 (2018) (citation and internal quotation marks omitted).
To the extent defendant argues the court plainly erred in determining there was sufficient evidence to instruct on provocation as an exception to the defense of the home, I disagree.
We review for plain error because defendant did not object on this basis at trial. N.C.R. App. P. 10(a)(2), (a)(4). "Jury instructions must be supported by the evidence. Conversely, all essential issues arising from the evidence require jury instructions." State v. Bagley, 183 N.C. App. 514, 524, 644 S.E.2d 615, 622 (2007) (citations and internal quotation marks omitted). Therefore, to support an instruction on provocation, the State must present evidence that the defendant provoked the use of force.
I would hold the State put forth sufficient evidence that defendant provoked any force used against him where defendant himself testified he "escalated the situation" by arming himself and yelling at the people who were "minding their own business out in the street area." Accordingly, I would hold defendant's argument that the jury instructions on the habitation defense constituted plain error is without merit.
*278 III. Lying in Wait
Finally, defendant argues the trial court committed reversible error by instructing the jury on the theory of lying in wait because the evidence did not support the instruction.
"[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed de novo by this Court." State v. Osorio , 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009) (citations omitted). "Where jury *50 instructions are given without supporting evidence, a new trial is required." State v. Porter , 340 N.C. 320, 331, 457 S.E.2d 716, 721 (1995) (citation omitted). However, if "a request for instructions is correct in law and supported by the evidence in the case, the court must give the instruction in substance." State v. Thompson , 328 N.C. 477, 489, 402 S.E.2d 386, 392 (1991).
Our Supreme Court defines "first-degree murder perpetrated by means of lying in wait" as "a killing where the assassin has stationed himself or is lying in ambush for a private attack upon his victim." State v. Leroux , 326 N.C. 368, 375, 390 S.E.2d 314, 320 (1990) (citations and internal quotation marks omitted). The perpetrator must intentionally assault "the victim, proximately causing the victim's death." State v. Grullon , 240 N.C. App. 55, 60, 770 S.E.2d 379, 383 (2015) (citation and internal quotation marks omitted).
Defendant argues the evidence does not support an instruction on first degree murder by lying in wait because the evidence did not show he laid in wait to shoot a victim, but, rather, it shows he armed himself to protect his house from intruders until police arrived to disperse the individuals gathered in front of his house. I disagree.
The State put forth sufficient evidence to support an instruction on lying in wait, even assuming arguendo defendant offered evidence that suggests otherwise. The State's evidence shows defendant concealed himself in his darkened garage with a shotgun, equipped with a suppression device. Defendant shot the victim, firing the shotgun through the garage's window. The shot bewildered bystanders because it was unclear what happened, and defendant had not warned the crowd before firing his weapon.
This evidence supports the lying in wait instruction because it tends to show defendant stationed himself, concealed and waiting, to shoot the victim, and this action proximately caused the victim's death. Accordingly, I would hold the trial court did not err when it instructed the jury on murder by lying in wait.
*279 IV. Conclusion
In conclusion, I must also note that, in addition to briefing an issue raised by defendant, the majority also undertakes review of an issue at trial that was not raised on appeal-whether the trial court erred because it used the pattern jury instruction for the defense of habitation, which the majority avers does not define "home" consistent with North Carolina law. Although the majority states that the pattern jury instruction should be reviewed and updated based on its analysis, I note that this conclusion is dicta .
For the forgoing reasons, I respectfully dissent.