STATE OF NORTH CAROLINA v. LESLEY EUGENE WARREN

No. 562A96

(Filed 7 November 1997)

1. **Criminal Law § 1342 (NCI4th Rev.)— capital sentencing— photographs of prior victim—admissibility to illustrate testimony and show aggravating circumstance**

Postmortem photographs of a woman defendant previously murdered in South Carolina were properly admitted in defendant's capital sentencing proceeding to illustrate an officer's testimony and to support the existence of the (e)(3) aggravating circumstance that defendant had previously been convicted of a felony involving violence to a person. N.C.G.S. § 15A-2000(e)(3).

**Am Jur 2d, Trial §§ 1759, 1760.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-*Gregg* cases. 65 ALR4th 838.**

2. **Criminal Law § 1335 (NCI4th Rev.)— capital sentencing— victim's disinterment—admissibility of videotape**

A videotape of the disinterment of the murder victim's body was properly admitted in a capital sentencing proceeding to illustrate an officer's testimony regarding defendant's treatment and

concealment of the body and to show defendant's intent to kill, malice, premeditation, and deliberation.

**Am Jur 2d, Evidence §§ 979-985.**

3. **Evidence and Witnesses § 2171 (NCI4th)— capital sentencing—cross-examination of defendant's expert— defendant's prior bad acts—door opened—basis for diagnosis**

The trial court properly permitted the State to cross-examine defendant's expert witness in a capital sentencing proceeding about bad acts defendant committed prior to the murder in this case since (1) defendant opened the door by eliciting testimony about these bad acts on direct examination, and (2) the cross-examination was proper to explore the basis for the expert's opinion and diagnosis where the expert had testified on direct examination that prior bad acts, including defendant's acts of theft, vandalism, and distributing threatening letters, formed the basis for various diagnoses over the years. Furthermore, the State's cross-examination of defendant's expert about defendant's prior bad acts did not violate defendant's plea agreement because that agreement specifically permitted the State to offer evidence of defendant's prior crimes if such evidence became relevant to cross-examination of a defense witness.

**Am Jur 2d, Evidence §§ 404 et seq.**

4. **Criminal Law § 466 (NCI4th Rev.)— capital sentencing—life sentence in South Carolina—parole eligibility— irrelevancy**

The trial court did not err when it refused to allow defendant to inform the jury in a capital sentencing proceeding that he had received a life sentence for first-degree murder in South Carolina under which he is parole-eligible after serving twenty years because evidence about parole eligibility does not reveal anything about defendant's character or record or about circumstances of the offense. The case of *Simmons v. South Carolina,* 512 U.S. 154, is inapposite because defendant will be eligible for parole after serving twenty years of his life sentence in South Carolina and would have been eligible for parole after serving twenty years had he received a life sentence in this case.

**Am Jur 2d, Trial § 1661.**

STATE v. WARREN

[347 N.C. 309 (1997)]

**·5. Criminal Law § 1364 (NCI4th Rev.)— capital sentencing— (e)(3) aggravating circumstance—meaning of "previously convicted"**

· The "previously convicted" language in the N.C.G.S. § 15A-2000(e)(3) aggravating circumstance includes criminal activity conducted prior to the events out of which the charge of murder arose, even when the conviction came after those events, provided the conviction occurs before the capital sentencing proceeding in which it is used as the basis of the (e)(3) aggravator. Therefore, the trial court properly submitted defendant's conviction for first-degree murder in South Carolina for consideration under the (e)(3) aggravating circumstance where defendant committed the South Carolina murder before he committed the murder in this case and was convicted of it prior to this capital sentencing proceeding, even though his South Carolina conviction did not precede the murder at issue. Contrary language in *State v. Williams*, 339 N.C. 1, 452 S.E.2d 245 is disavowed.

**Am Jur 2d, Trial §§ 1759, 1760.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-*Gregg* cases. 65 ALR4th 838.**

**6. Criminal Law § 690 (NCI4th Rev.)— capital sentencing— mitigating circumstance—age—peremptory instruction not required**

Although defendant was only twenty-two and a half years old when he murdered the victim, his mental and physical maturity, experience, and prior criminal history supported the trial court's denial of defendant's request for a peremptory instruction in this capital sentencing proceeding on the (f)(7) mitigating circumstance of age. N.C.G.S. § 15A-2000(f)(7).

**Am Jur 2d, Trial §§ 1759, 1760.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-*Gregg* cases. 65 ALR4th 838.**

STATE v. WARREN

[347 N.C. 309 (1997)]

**7. Criminal Law § 690 (NCI4th Rev.)— capital sentencing— nonstatutory mitigating circumstance—failure to give peremptory instruction—harmless error**

The trial court erred in the denial of defendant's request for a peremptory instruction on the nonstatutory mitigating circumstance that he had graduated from a truck-driving school because the evidence on this circumstance was uncontroverted and the State stipulated to this fact; however, this error was harmless beyond a reasonable doubt where the jury knew that it was uncontroverted that defendant had graduated from truck-driving school; this fact was listed as a nonstatutory mitigator on the Issues and Recommendation as to Punishment form; the prosecutor stated during closing argument that the State had stipulated to this fact; and a peremptory instruction would thus not have altered the jury's conclusion regarding defendant's sentence.

**Am Jur 2d, Trial §§ 1759, 1760.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-*Gregg* cases. 65 ALR4th 838.**

**8. Criminal Law § 458 (NCI4th Rev.)— capital sentencing— prosecutor's jury argument—value of statutory mitigating circumstances—no gross impropriety**

The prosecutor's jury argument in a capital sentencing proceeding that, if the jury found statutory mitigating circumstances to exist, "then you should consider them in whatever way you might want to use them," while somewhat misleading as to the value the jury must accord to statutory mitigating circumstances, was not so grossly improper as to require the trial court to intervene *ex mero motu* and was not reversible error where the trial court correctly instructed the jurors on the law regarding statutory and nonstatutory mitigating circumstances, and the court also instructed that the jurors must apply the law as the court gave it to them, not as the attorneys gave it to them or as they might like it to be.

**Am Jur 2d, Trial §§ 1759, 1760.**

STATE v. WARREN

[347 N.C. 309 (1997)]

Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-*Gregg* cases. 65 ALR4th 838.

**9. Criminal Law § 115 (NCI4th Rev.)— report of defendant's nontestifying psychologist—no constitutional or statutory right to discovery**

The State had no constitutional or statutory right to discover the report of a clinical psychologist who had examined defendant, at defendant's request, in preparation for his murder trial where defendant did not intend to introduce the report at trial and did not call the psychologist to testify. N.C.G.S. §§ 15A-905(b).

**Am Jur 2d, Depositions and Discovery §§ 50, 51, 56, 65.**

**10. Criminal Law § 98 (NCI4th Rev.)— compelling discovery— inherent authority of trial court**

The trial court possesses inherent authority to compel discovery in certain instances in the interest of justice when no statute has placed a limitation on the trial court's authority.

**Am Jur 2d, Depositions and Discovery §§ 5, 7.**

**11. Criminal Law § 115 (NCI4th Rev.)— nontestifying psychologist's report—denial of pretrial discovery**

Under the limitation set forth in N.C.G.S. § 15A-906, the trial court properly declined to compel defendant to disclose his nontestifying psychologist's report when the State requested such disclosure prior to trial.

**Am Jur 2d, Depositions and Discovery §§ 50, 51, 56, 65.**

**12. Criminal Law § 98 (NCI4th Rev.)— pretrial discovery—limiting statute—discovery at later stage—inherent authority of court**

Even when statutes limit the trial court's authority to compel pretrial discovery, the court may retain inherent authority to compel discovery of the same documents at a later stage of the proceedings.

**Am Jur 2d, Depositions and Discovery §§ 5, 7.**

**13. Criminal Law § 115 (NCI4th Rev.)— discovery—report of nontestifying psychologist—use for cross-examining expert**

The trial court had the inherent authority to compel defendant to disclose to the State a nontestifying psychologist's report after defendant admitted guilt of first-degree murder and after the capital sentencing proceeding was underway where defendant's mental health expert testified that he had studied every mental health report in defendant's medical history, and the State sought to discover the nontestifying psychologist's report for use during its cross-examination of defendant's expert. Assuming that the trial court erred in compelling such discovery, the error was harmless beyond a reasonable doubt where nothing in the record suggests that the State's cross-examination of defendant's expert would not have been equally effective without the use of the report.

**Am Jur 2d, Depositions and Discovery §§ 93 et seq., 260, 263.**

**14. Jury § 226 (NCI4th)— excusal for cause—death penalty views—rehabilitation denied**

The trial court did not abuse its discretion in denying defendant's requests to rehabilitate five jurors excused for cause based upon their death penalty views where each of the jurors clearly demonstrated that he or she would have been unable to vote for the death penalty under any circumstances; the court asked clarifying questions of the first four to assure their opposition to the death penalty; and the last juror's statements were so clear that the court did not need to ask further questions before excusing him.

**Am Jur 2d, Jury §§ 205, 206, 279.**

**15. Criminal Law § 1402 (NCI4th Rev.)— death penalty not disproportionate**

A sentence of death imposed upon defendant for first-degree murder is not excessive or disproportionate where the jury found as an aggravating circumstance that defendant had been previously convicted of a felony involving the use or threat of violence to the person, N.C.G.S. § 15A-2000(e)(3), and defendant had previously been convicted of another first-degree murder.

**Am Jur 2d, Criminal Law §§ 625-628.**

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Stephens (Ronald L.), J., at the 18 September 1995 Criminal Session of Superior Court, Buncombe County, upon defendant's plea of guilty of first-degree murder. Heard in the Supreme Court 15 October 1997.

*Michael F. Easley, Attorney General, by William P. Hart, Special Deputy Attorney General, for the State.*

*Anthony Lynch for defendant-appellant.*

WHICHARD, Justice.

In February 1995 defendant, Lesley Eugene Warren, pled guilty to the first-degree murder of Jayme Denise Hurley. After a capital sentencing proceeding, the jury recommended a sentence of death. Defendant now appeals from this sentence. We find no prejudicial error and hold that defendant received a fair capital sentencing proceeding and that the sentence of death is not disproportionate.

The State's evidence tended to show that on 24 May 1990, defendant visited the home of Jayme Hurley, defendant's former juvenile counselor. Defendant told Hurley he needed help, and Hurley agreed to let defendant sleep on her couch for the night. Late in the evening, defendant strangled Hurley to death.

Defendant took Hurley's dead, naked body to a rocky and remote area of the Pisgah National Forest, 210 feet from a paved road, and buried the body in a shallow grave covered with rocks and an engine part. He placed Hurley's clothes under a log a short distance away. Police did not find the body until 18 July 1990.

Upon questioning, defendant admitted that he had killed Hurley. Defendant pled guilty to first-degree murder. During his capital sentencing proceeding, defendant stipulated that he had been convicted of the first-degree murder of another woman, Velma Faye Gray, in South Carolina, for which he was sentenced to life in prison.

Defendant first contends the trial court erred by allowing into evidence, over defendant's objection, postmortem photographs of the woman he murdered in South Carolina and a videotape of the disinterment of the victim in this case. He asserts that these images unduly prejudiced the jury against him and lacked relevance to any issue in sentencing. We disagree.

STATE v. WARREN

[347 N.C. 309 (1997)]

During a sentencing proceeding, the trial court may admit any evidence it " 'deems relevant to sentenc[ing].' " *State v. Heatwole*, 344 N.C. 1, 25, 473 S.E.2d 310, 322 (1996) (quoting *State v. Daughtry*, 340 N.C. 488, 517, 459 S.E.2d 747, 762 (1995), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 739 (1996)), *cert. denied*, —— U.S. ——, 137 L. Ed. 2d 339 (1997). "[T]he State must be permitted to present any competent evidence supporting the imposition of the death penalty," *id.*, including photographs of the victim. The State may introduce photographs and videotapes to illustrate the testimony of a witness regarding the manner of a killing. *State v. Kandies*, 342 N.C. 419, 444, 467 S.E.2d 67, 80, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 167 (1996). Further, the State may present evidence of the circumstances surrounding a defendant's prior felony, notwithstanding the defendant's stipulation to the record of conviction, to support the existence of aggravating circumstances. *Heatwole*, 344 N.C. at 19, 473 S.E.2d at 319. If the felony of which defendant has previously been convicted was a particularly shocking or heinous crime, the jury should be so informed. *Id.*

[1],[2] Here, the postmortem photographs of Gray, defendant's victim in South Carolina, illustrated the testimony of Sergeant Michael Ennis and supported the existence of the (e)(3) aggravating circumstance, that defendant had been previously convicted of a felony involving the use of violence to a person. *See* N.C.G.S. § 15A-2000(e)(3) (Supp. 1996). The videotape of the disinterment of Hurley, defendant's victim in this case, properly illustrated the testimony of Captain Ross Robinson regarding defendant's treatment and concealment of the body. This evidence was competent and relevant circumstantial evidence regarding defendant's intent to kill, malice, premeditation, and deliberation. *See Kandies*, 342 N.C. at 444, 467 S.E.2d at 81.

Whether photographic evidence is more probative than prejudicial is within the trial court's discretion. *Heatwole*, 344 N.C. at 25, 473 S.E.2d at 322; *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). Here, defendant has failed to show that the trial court abused its discretion by admitting photographs of defendant's prior murder victim or by admitting a videotape of the disinterment of the victim in this case. This assignment of error is overruled.

[3] Defendant next argues that the trial court improperly permitted the State to cross-examine defendant's expert witness, Dr. Bruce Welch, about bad acts defendant committed prior to the murder in this case. Defendant contends that this cross-examination violated

his plea agreement and the Rules of Evidence. This contention lacks merit for several reasons.

First, defendant opened the door by eliciting testimony about these acts on direct examination. Welch testified that defendant was referred to the Blue Ridge Community Mental Health Center in 1982 because defendant "wrote letters that were strange enough, bizarre and frightening enough to people that he was referred for treatment and evaluation." Welch also testified that defendant had "broken all kinds of rules . . . vandalized things . . . stolen things."

After defendant elicited this testimony, the State notified the trial court that it intended on cross-examination to inquire into details of defendant's threatening letters and acts of vandalism and theft. The trial court heard arguments and considered *voir dire* testimony before allowing limited inquiry into the matters brought out on direct examination. During this cross-examination before the jury, the State questioned Welch about defendant's threatening letters, theft, and vandalism, and highlighted inconsistencies between Welch's testimony and the report from Blue Ridge Community Mental Health Center. This was proper. The law "wisely permits evidence not otherwise admissible to be offered to explain or rebut evidence elicited by the defendant himself." *State v. Albert*, 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981).

The cross-examination was also proper to explore the basis for the expert's opinion and diagnoses. Defendant's expert had testified on direct examination that prior bad acts, including defendant's acts of theft, vandalism, and distributing threatening letters, formed the basis for the various diagnoses of defendant over the years. As such, they were relevant to the jury's full understanding and consideration of those diagnoses. *See* N.C.G.S. § 8C-1, Rule 705 (1992); *State v. Coffey*, 336 N.C. 412, 420, 444 S.E.2d 431, 436 (1994).

The trial court has broad discretion over the scope of cross-examination. *State v. Woods*, 345 N.C. 294, 307, 480 S.E.2d 647, 653, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 132 (1997). In a sentencing proceeding, the Rules of Evidence do not limit this discretion because they do not apply. N.C.G.S. § 8C-1, Rule 1101(b)(3) (1992); *see also* N.C.G.S. § 15A-2000(a)(3) (evidence "may be presented as to any matter that the court deems relevant to sentence"). Because defendant first elicited the testimony about his prior bad acts and because those acts formed part of the basis of

his expert's diagnoses, the trial court did not abuse its discretion in permitting the State to cross-examine the expert regarding them.

Further, defendant waived his right to appellate review by not fully objecting and not properly preserving the objections he made. Although defendant filed motions *in limine* requesting that the trial court preclude the State from presenting evidence of his prior bad acts, "[a] motion *in limine* is insufficient to preserve for appeal the question of the admissibility of evidence if the defendant fails to further object to that evidence at the time it is offered at trial." *State v. Conaway*, 339 N.C. 487, 521, 453 S.E.2d 824, 845, *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 153 (1995). Defendant objected to some evidence of prior bad acts, but he waived any right to review of that evidence by presenting similar evidence on direct examination of his own expert and by not objecting to similar evidence offered by the State. *See State v. Alford*, 339 N.C. 562, 569-70, 453 S.E.2d 512, 516 (1995).

Finally, the State's cross-examination of defendant's expert regarding defendant's prior bad acts did not violate defendant's plea agreement. That agreement specifically permitted the State to offer evidence about defendant's prior crimes if such evidence became relevant to cross-examination of a defense witness. This assignment of error is overruled.

[4] By his third assignment of error, defendant contends the trial court erred and violated his constitutional rights when it refused to allow him to inform the jury that he had received a life sentence for first-degree murder in South Carolina under which he is parole-eligible after serving twenty years. Defendant concedes that this Court has decided this issue contrary to his position. In *State v. Payne*, 337 N.C. 505, 516, 448 S.E.2d 93, 99 (1994), *cert. denied*, 514 U.S. 1038, 131 L. Ed. 2d 292 (1995), this Court held that "evidence about parole eligibility is not relevant in a capital sentencing proceeding because it does not reveal anything about defendant's character or record or about any circumstances of the offense." The Court also held that *Simmons v. South Carolina*, 512 U.S. 154, 129 L. Ed. 2d 133 (1994), does not affect this position where a defendant is parole-eligible if given a life sentence. *Payne*, 337 N.C. at 516, 448 S.E.2d at 99. In *Simmons* the United States Supreme Court held that it was error to refuse to give a proposed jury instruction that a defendant was ineligible for parole under state law. That case is inapposite because defendant here will be eligible for parole after serving

twenty years of his life sentence in South Carolina and would have been eligible for parole after serving twenty years had he received a life sentence in this case. *See State v. Skipper*, 337 N.C. 1, 44, 446 S.E.2d 252, 276 (1994), *cert. denied*, 513 U.S. 1134, 130 L. Ed. 2d 895 (1995). This assignment of error is overruled.

**[5]** By his fourth assignment, defendant argues that because he had not been *convicted* of the prior murder before he committed the murder in this case, the trial court improperly submitted the (e)(3) aggravating circumstance to the jury. He recognizes that N.C.G.S. § 15A-2000(e)(3) permits a jury to consider as an aggravating circumstance whether "defendant had been previously convicted of a felony involving the use or threat of violence to the person." He asserts, however, that this aggravating circumstance *cannot* be submitted when only the *conduct*, not the *conviction*, preceded the murder at issue. He acknowledges that the *conduct* upon which his prior murder conviction was based occurred before the murder at issue.

Defendant relies primarily upon dictum in *State v. Williams*, 339 N.C. 1, 46, 452 S.E.2d 245, 272 (1994), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 61 (1995), where this Court stated that a jury instruction on the (e)(3) aggravating circumstance is correct when it "tells the jury that the [prior felony] conviction, in order to be an aggravating circumstance, must have preceded the murder for which defendant had been found guilty." This dictum is contrary to many decisions of this Court, both pre- and post-*Williams*. This Court has held on numerous occasions that the (e)(3) circumstance is properly submitted when the *conduct* upon which the prior conviction is based occurred prior to the murder at issue. In *State v. Goodman*, 298 N.C. 1, 22, 257 S.E.2d 569, 583 (1979), we stated:

G.S. 15A-2000(e)(3) states that one of the aggravating factors which may justify the imposition of the death penalty is the fact that the "defendant had been previously convicted of a felony involving the use or threat of violence to the person." This section requires that there be evidence that (1) defendant had been convicted of a felony, that (2) the felony for which he was convicted involved the "use or threat of violence to the person," and that (3) the *conduct upon which this conviction was based was conduct which occurred prior to the events out of which the capital felony charge arose*.

(Emphasis added.) The *Goodman* interpretation was reaffirmed several times before *Williams. See, e.g., State v. Hamlette*, 302 N.C. 490,

STATE v. WARREN

[347 N.C. 309 (1997)]

503-04, 276 S.E.2d 338, 347 (1981); *State v. Silhan,* 302 N.C. 223, 266, 275 S.E.2d 450, 480 (1981), *overruled on other grounds by State v. Sanderson,* 346 N.C. 669, 679, 488 S.E.2d 133, 138 (1997). In cases decided post-*Williams,* this Court has reviewed its prior decisions and reaffirmed the *Goodman* holding. *See, e.g., State v. Burke,* 343 N.C. 129, 157-59, 469 S.E.2d 901, 915, *cert. denied,* —— U.S. ——, 136 L. Ed. 2d 409 (1996); *State v. Lyons,* 343 N.C. 1, 22, 468 S.E.2d 204, 214, *cert. denied,* —— U.S. ——, 136 L. Ed. 2d 167 (1996).

We now reaffirm that the "previously convicted" language in N.C.G.S. § 15A-2000(e)(3) includes "criminal activity *conducted* prior to the events out of which the charge of murder arose," even when the *conviction* came after those events, provided the conviction occurs before the capital sentencing proceeding in which it is used as the basis of the (e)(3) aggravator. *Lyons,* 343 N.C. at 22, 468 S.E.2d at 214 (emphasis added). We disavow the language in *Williams* to the contrary. *See Williams,* 339 N.C. at 46, 452 S.E.2d at 272. Because defendant *committed* the murder in South Carolina *before* he committed the murder here and was convicted of it prior to this capital sentencing proceeding, the trial court properly submitted the South Carolina conviction for consideration under the (e)(3) aggravating circumstance. We thus overrule this assignment of error.

[6] In his next assignment, defendant contends the trial court committed prejudicial error by denying his requests for peremptory instructions on the statutory mitigating circumstance regarding his age at the time of the crime, N.C.G.S. § 15A-2000(f)(7), and on the nonstatutory mitigating circumstance that he had graduated from truck-driving school. We disagree.

Where a defendant requests a peremptory instruction and "all of the evidence . . . , if believed, tends to show that a particular mitigating circumstance does exist, the defendant is entitled to a peremptory instruction on that circumstance." *State v. Johnson,* 298 N.C. 47, 76, 257 S.E.2d 597, 618 (1979). All of the evidence here did not support the existence of the mitigating circumstance regarding defendant's age, however.

Under the (f)(7) mitigating circumstance, age does not mean solely chronological age. Rather, the circumstance "permits the jury to consider such factors as the defendant's mental and physical maturity, experience, and prior criminal history as well as his chronological age in determining whether age is mitigating." *State v. Simpson,* 341 N.C. 316, 350, 462 S.E.2d 191, 210 (1995), *cert. denied,* —— U.S.

——, 134 L. Ed. 2d 194 (1996). Although defendant was only twenty-two and a half years old when he murdered Hurley, his mental and physical maturity, experiences, and prior criminal history all support the trial court's decision to deny the request for a peremptory instruction on the (f)(7) circumstance. Defendant had an IQ of 115-125. He had graduated from truck-driving school. He admitted to hiding the bodies of his murder victims to avoid being accused of those crimes. Defendant had entered the military at the age of nineteen. He had considerable work experience, including jobs at a factory, in a restaurant, and as a truck driver. He had two sons. He also had a considerable history of criminal behavior. From the age of ten, defendant had been lying, stealing, vandalizing property, breaking into homes, threatening people, and using illegal drugs. Additionally, defendant admitted that he had committed a prior murder. Under these circumstances the assertion that "all of the evidence" supports the existence of the (f)(7) mitigating circumstance cannot avail. *See, e.g., id.* at 346-47, 462 S.E.2d at 208; *State v. Turner,* 330 N.C. 249, 268-69, 410 S.E.2d 847, 858 (1991). The trial court thus did not err in denying defendant's request for a peremptory instruction.

**[7]** Defendant twice requested and was denied a peremptory instruction on the nonstatutory mitigating circumstance that he had graduated from truck-driving school. The evidence on this was uncontroverted, and the State stipulated to this fact. The trial court thus erred in denying defendant's requests. *State v. Buckner,* 342 N.C. 198, 235, 464 S.E.2d 414, 435 (1995), *cert. denied,* —— U.S. ——, 136 L. Ed. 2d 47 (1996).

This error is harmless beyond a reasonable doubt, however. N.C.G.S. § 15A-1443(b) (1988). The jury knew defendant had graduated from truck-driving school and that this was uncontroverted. It knew that it could consider this as a nonstatutory mitigator because it was listed as such on the Issues and Recommendation as to Punishment form. During the State's closing arguments, the prosecutor stated, "With regard to the nonstatutory, you have to find first, folks, the truck driver school. You have to find first that it exists. Well, we've all stipulated he graduated from the school." Under these circumstances, we cannot reasonably hold that a peremptory instruction on this nonstatutory mitigating circumstance would have altered the jury's conclusion regarding defendant's sentence. This assignment of error is overruled.

**[8]** In his sixth assignment, defendant asserts that the trial court abused its discretion in overruling his objection to a statement made

during the State's closing argument and that the court should have intervened *ex mero motu* to correct a later remark by the prosecutor. Both comments concerned how jurors should treat mitigating circumstances. First, one of the prosecutors stated that the jury "must consider [whether] any of the factors [the jurors] may have heard about [are] mitigating. Are they such as the law requires . . . ." At this point defendant objected and was overruled. Second, the State's other prosecutor stated:

> There are two types of circumstances that you deal with, statutory and non-statutory, and there's a different process you go about when you decide whether or not they exist. The statutory . . . if you find that they exist, then you should consider them in whatever way you might want to use them. With regard to the non-statutory, . . . you have to find first that it exists. . . . Secondly, you have to find that it has mitigating value.

Defendant did not object to this statement at trial.

It is well settled that the arguments of counsel are left largely to the discretion of the trial court. *State v. Williams*, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986).

> In capital cases . . . an appellate court may review the prosecution's argument, even though defendant raised no objection at trial, but the impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it.

*State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979). A trial court is not required to intervene *ex mero motu* where a prosecutor makes comments during closing argument which are substantially correct "shorthand summaries" of the law, "even if slightly slanted toward the State's perspective." *State v. Frye*, 341 N.C. 470, 491, 461 S.E.2d 664, 682-83 (1995), *cert. denied,* —— U.S. ——, 134 L. Ed. 2d 526 (1996).

As to the first statement here, defendant's objection interrupted the prosecutor's sentence, and the trial court could not determine whether the sentence would be objectionable. The court thus properly permitted the prosecutor to complete her statement. Defendant does not now contest the propriety of the prosecutor's completed

statement. The trial court thus did not err or abuse its discretion in overruling the objection.

The second argument which defendant now asserts was improper, while perhaps somewhat misleading as to the value the jury must accord to statutory mitigating circumstances, was not so grossly improper as to require the trial court to intervene *ex mero motu*. Further, the court correctly instructed the jurors on the law regarding statutory and nonstatutory mitigating circumstances. It also instructed that the jurors must apply the law as the court gave it to them, not as the attorneys gave it to them or as the jurors might like it to be. Under these circumstances we cannot reasonably find reversible error warranting a new capital sentencing proceeding.

In his next assignment, defendant argues that the trial court impermissibly ordered disclosure to the State of a report prepared by a clinical psychologist, Dr. Diane Folingstad, who had examined defendant, at defendant's request, in preparation for trial. Defendant does not assert that this report was privileged work product.

The trial court did not order disclosure of this report upon the State's first request. At the beginning of the sentencing proceeding, it denied the State's request to discover Folingstad's report because defendant had not decided whether he would have Folingstad testify. After defendant conclusively determined that he would not call Folingstad, the State again requested discovery of her report. After hearing arguments from both sides, the court again declined to compel defendant to disclose Folingstad's report to the State.

Defendant did not introduce this report and did not call Folingstad to testify. Instead, Dr. Bruce Welch, a forensic psychiatrist, testified on defendant's behalf regarding defendant's mental status. Welch told the jury that before forming his expert opinion, he had examined all possible information about defendant, including past tests done by psychologists, psychiatrists, and any mental health workers who may have been in contact with defendant.

After direct examination of Welch, the trial court elicited *voir dire* testimony from him. Welch testified that although he had viewed Folingstad's report, he had not viewed her raw data and had not relied upon anything in her report in generating his expert opinion. At this point the trial court ordered defendant to disclose Folingstad's report to the State. Defendant argues that the State had no right to discover this report and that the trial court's order permitting discovery was error.

At common law neither the State nor a defendant enjoyed a *right* of discovery. *State v. Goldberg,* 261 N.C. 181, 191, 134 S.E.2d 334, 340, *cert. denied,* 377 U.S. 978, 12 L. Ed. 2d 747 (1964), *overruled on other grounds by News & Observer Publishing Co. v. State ex rel. Starling,* 312 N.C. 276, 283, 322 S.E.2d 133, 138 (1984). However, limited rights of discovery have evolved for both the State and a defendant under the United States Constitution, *see, e.g., Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215 (1963) (constitutional require-ment that the State disclose certain information favorable to defend-ant prior to trial), and state statutes, N.C.G.S. §§ 15A-901 to -910 (1988) (statutory rights of discovery for defendant and the State).

**[9]** The State had no right to discover the nontestifying expert's report under these constitutional or statutory principles. No court has concluded that the federal Constitution demands disclosure of such reports. Although North Carolina's discovery statutes permit the State to discover some of a defendant's documents, they do not authorize discovery of the report at issue.

N.C.G.S. § 15A-905(b) provides, in relevant part:

[T]he court must, upon motion of the State, order the defendant to permit the State to inspect and copy or photograph results or reports of physical or mental examinations . . . made in connec-tion with the case . . . within the possession and control of the defendant *which the defendant intends to introduce in evidence at the trial or which were prepared by a witness whom the defendant intends to call at the trial,* when the results or reports relate to his testimony.

(Emphasis added.) Because defendant did not intend to introduce the report at trial and did not call Folingstad to testify, the State did not have a right to discover this report under N.C.G.S. § 15A-905(b). Moreover, N.C.G.S. § 15A-906 restricts discovery of reports found inadmissible under N.C.G.S. § 15A-905(b). N.C.G.S. § 15A-906 provides: "Except as provided in G.S. 15A-905(b) this Article *does not authorize the discovery or inspection of reports . . . made by the defendant* or his attorneys *or agents* in connection with the investi-gation or defense of the case . . . ." (Emphasis added.) Thus, the trial court did not possess statutory authority to order defendant to dis-close the report to the State.

**[10],[11]** However, the "absence of discovery as a matter of right does not necessarily preclude the trial judge from ordering discovery in his discretion." *State v. Hardy*, 293 N.C. 105, 124, 235 S.E.2d 828, 840 (1977). The trial court possesses "inherent authority" to compel discovery in certain instances in the interest of justice. *Id.* at 124-25, 235 S.E.2d at 839-40; *see also State v. Taylor*, 327 N.C. 147, 153-54, 393 S.E.2d 801, 806 (1990). The General Statutes place some limits on this inherent authority. For example, "where a statute expressly restricts pretrial discovery, . . . the trial court has no authority to order discovery." *Hardy*, 293 N.C. at 125, 235 S.E.2d at 840 (concluding that N.C.G.S. § 15A-904, which parallels N.C.G.S. § 15A-906, limits the trial court's inherent authority to compel discovery). Under this limitation the trial court properly declined to compel defendant to disclose his psychologist's report when the State requested such disclosure *prior to trial*.

**[12],[13]** However, even when the statutes limit the trial court's authority to compel *pretrial* discovery, the court may retain inherent authority to compel discovery of the same documents at a later stage in the proceedings. *See Taylor*, 327 N.C. at 154, 393 S.E.2d at 806 (judiciary has inherent power to compel disclosure of facts after a trial is complete and during a post-trial motion); *Hardy*, 293 N.C. at 125, 235 S.E.2d at 840 (trial court properly exercised its inherent authority to compel discovery of documents restricted from pretrial discovery under N.C.G.S. § 15A-904 after the trial was underway). Thus, the question is whether the trial court possessed inherent authority to compel disclosure of a nontestifying psychologist's report to the State *after* defendant admitted guilt and *after* the capital sentencing proceeding was underway.

Once a trial is underway,

> the major concern is the "search for truth" as it is revealed through the presentation and development of all relevant facts. To insure that truth is ascertained and justice served, the judiciary must have the power to compel the disclosure of relevant facts, not otherwise privileged, within the framework of the rules of evidence.

*Hardy*, 293 N.C. at 125, 235 S.E.2d at 840. In a capital sentencing proceeding, where the Rules of Evidence do not apply, a trial court has great discretion to admit *any* evidence it " 'deems relevant to sentenc[ing].' " *Heatwole*, 344 N.C. at 25, 473 S.E.2d at 322 (quoting *Daughtry*, 340 N.C. at 517, 459 S.E.2d at 762). More specifically, the

trial court must permit the State "to present any competent evidence supporting the imposition of the death penalty." *Id.*

After defendant's mental health expert testified that he had studied every mental health report in defendant's medical history, the State sought to discover one such report for use during its cross-examination of defendant's expert. Under these circumstances, we hold that the trial court did not abuse its discretion in compelling defendant to disclose that report to the State. We accordingly overrule this assignment of error.

Assuming *arguendo* that the trial court erred in compelling such discovery, the error was harmless beyond a reasonable doubt. *See* N.C.G.S. § 15A-1443(b). Defendant does not assert that any error in compelling such discovery was prejudicial. Instead, he simply notes that the State took advantage of the nontestifying psychologist's report to prepare a "devastating cross-examination" of defendant's testifying expert. Nothing in the record, however, suggests that the State's cross-examination would not have been equally effective without the use of the psychologist's report. Thus, we cannot reasonably find prejudicial error warranting a new capital sentencing proceeding.

[14] By his final assignment, defendant contends the trial court improperly denied his pretrial motion to question jurors the State challenged for cause based upon their views on the death penalty. Defendant also argues that the court improperly prevented him from questioning five individual jurors after the court excused them for cause.

A defendant has no absolute right to question or to rehabilitate prospective jurors before or after the trial court excuses such jurors for cause. *State v. East*, 345 N.C. 535, 547, 481 S.E.2d 652, 660, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 236 (1997). Rather, the trial court "retains discretion as to the extent and manner of questioning, and its decisions will not be overturned absent a showing of abuse of discretion." *Id.; see also State v. Brogden*, 334 N.C. 39, 43-46, 430 S.E.2d 905, 908-09 (1993).

The trial court denied defendant's pretrial motion in which defendant sought a blanket statement permitting him to rehabilitate *every* juror the State challenged for cause. The trial court explained that it would exercise its discretion upon each *individual* request for rehabilitation, and it appears to have done so on a

juror-by-juror basis. Defendant has not shown an abuse of discretion, and we find none.

Defendant requested rehabilitation in five instances. In each the jurors had clearly demonstrated that they would have been unable to vote for the death penalty under any circumstances, and the trial court properly excused them for cause. The court asked clarifying questions of the first four to assure their opposition to the death penalty before excusing them. The last juror's statements were so clear that the court did not need to ask further questions before excusing him. There is no evidence from which to conclude that the trial court abused its discretion in denying defendant's requests to rehabilitate jurors. We accordingly overrule this assignment of error.

## PROPORTIONALITY REVIEW

Having concluded that defendant's capital sentencing proceeding was free of prejudicial error, it is our duty to ascertain: (1) whether the evidence supports the jury's findings of the aggravating circumstance on which the sentence of death was based; (2) whether the sentence was entered under the influence of passion, prejudice, or any other arbitrary consideration; and (3) whether the sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2).

The jury found as an aggravating circumstance that defendant had been previously convicted of a felony involving the use or threat of violence to the person. N.C.G.S. § 15A-2000(e)(3). The record fully supports this finding. Further, we find no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We turn then to our final statutory duty of proportionality review.

[15] In proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). We have found the death penalty disproportionate in seven cases: *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 177 (1997), *and State v. Vandiver*,

STATE v. WARREN

[347 N.C. 309 (1997)]

321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). This case is distinguishable from those cases. First, there are four statutory aggravating circumstances which, standing alone, this Court has held sufficient to sustain death sentences; the (e)(3) aggravator, which the jury found here, is among them. *State v. Bacon*, 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995). The (e)(3) aggravating circumstance reflects upon a defendant's character as a recidivist. *State v. Brown*, 320 N.C. 179, 224, 358 S.E.2d 1, 30, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987). Further, defendant here has been convicted of two murders. "We have remarked before, and it bears repeating, that this Court has never found disproportionality in a case in which the defendant was found guilty for the death of more than one victim." *State v. Price*, 326 N.C. 56, 96, 388 S.E.2d 84, 107, *sentence vacated on other grounds*, 498 U.S. 802, 112 L. Ed. 2d 7 (1990). It suffices to say that the present case is more similar to cases in which we have found the sentence of death proportionate than to those in which we have found it disproportionate.

After comparing this case to similar cases as to the crime and the defendant, we conclude that this case has the characteristics of first-degree murders for which we have previously held the death penalty proportionate. Accordingly, we cannot conclude that this death sentence is excessive or disproportionate. Therefore, the judgment of the trial court must be and is left undisturbed.

NO ERROR.