STATE OF NORTH CAROLINA v. DAVID CHARLES DIEHL

No. 195A00

(Filed 4 May 2001)

## 1. Criminal Law— prosecutor's argument—references to race—mistrial

The Court of Appeals erred in a first-degree murder case by concluding that the trial court abused its discretion when it denied defendant's motion for a mistrial under N.C.G.S. § 15A-1061 based on the prosecutor's alleged inappropriate reference to the race of the jurors, because (1) although it is improper to interject race into a jury argument where race is otherwise irrelevant, the prosecutor was properly pursuing a legitimate prosecutorial theory that race was a motive or factor in the crime; (2) defendant's original objection was immediately made and properly sustained, meaning defendant and the trial court could only speculate whether the prosecutor was undertaking an improper appeal to the racial prejudices of the jury; and (3) instruction by the trial court calling attention to the prosecutor's unfinished sentence may have done more harm than good.

## 2. Appeal and Error— preservation of issues—assignment of error does not encompass additional issues

Although defendant and amicus contend in a first-degree murder case that a prosecutor's additional remarks during closing argument were improper, these issues were not properly preserved because: (1) the scope of appellate review is limited to those issues raised in an assignment of error set out in the record on appeal; and (2) defendant's single assignment of error pertaining to closing argument does not direct the attention of the appellate court to the particular error about which the question is made nor does it refer to the transcript pages where any questionable comments may be found as required by N.C. R. App. P. 10(c)(1).

Justice MARTIN dissenting.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 137 N.C. App. 541, 528 S.E.2d 613 (2000), vacating a judgment entered 10 March 1998 by Albright, J., in Superior Court, Randolph County, and remanding for a new

trial. On 5 October 2000, the Supreme Court granted discretionary review of additional issues. Heard in the Supreme Court 14 February 2001.

> *Roy A. Cooper, Attorney General, by Buren R. Shields, III, Assistant Attorney General, for the State-appellant.*

> *Mary March Exum for defendant-appellee.*

> *Seth H. Jaffe, Counsel, American Civil Liberties Union of North Carolina Legal Foundation, amicus curiae.*

EDMUNDS, Justice.

On 16 January 1996, defendant David Charles Diehl was indicted for first-degree murder. The case was tried capitally. The jury found defendant guilty of first-degree murder on the basis of premeditation and deliberation. After a capital sentencing proceeding, the jury recommended life imprisonment without parole, and on 10 March 1998, the court imposed sentence accordingly. In a split decision, the Court of Appeals vacated defendant's conviction and judgment and remanded for a new trial, holding that the trial court erred in denying defendant's motion for mistrial. Judge Walker dissented, contending that any error in defendant's trial was not prejudicial, and the State appealed pursuant to N.C.G.S. § 7A-30(2). This Court also allowed the State's petition for discretionary review as to the related issue whether an incomplete comment made by the prosecutor in closing argument constituted an appeal to the jury for a "race-based decision." We reverse the holding of the Court of Appeals.

At trial, the State presented evidence that the victim, Jake Spinks, was found dead at his Asheboro, North Carolina, home in the early morning hours of 23 December 1995. Spinks, a dealer in crack cocaine, had been stabbed sixty-four times. Anise Raynor testified that approximately two weeks before the murder, he and defendant went to Spinks' home to purchase crack cocaine. When defendant expressed dissatisfaction with the quantity Spinks was willing to sell for fifty dollars, Spinks pointed a revolver at defendant and ordered him to leave. After defendant complied, he told Raynor that he would "get" Spinks.

On 22 December 1995, defendant and Raynor spent a large part of the day and evening smoking crack cocaine. Raynor testified that defendant told him that he (defendant) and Spinks "had worked something out" and that Spinks was going to give defendant money or

drugs because of a previous deal during which Spinks supposedly had taken defendant's money without providing any crack cocaine in return. Raynor dropped defendant off at a pay telephone approximately one block from Spinks' home, then left to buy crack cocaine for himself elsewhere. Later that night, Raynor searched for defendant and found him walking along a road near Spinks' house, wearing bloody clothes and carrying a butcher knife in the waist of his trousers. When Raynor asked what happened, defendant responded, "I had to do him, I had to do him." DNA testing confirmed that blood found in Spinks' kitchen was from defendant.

Defendant took the stand in his defense. He admitted being present at the killing, but claimed that Raynor had stabbed Spinks. Defendant testified that his blood was found at the crime scene only because his hand had been slashed when he attempted to calm Raynor. Although the evidence was undisputed that defendant's hand had been cut the evening of the murder and stitched by an emergency room doctor, defendant previously had provided conflicting accounts to explain his injury.

During closing argument in the guilt-innocence phase of the trial, the prosecutor referred to the race of the jurors. Defendant is white, as were all the jurors, while the victim was African-American. The prosecutor argued, "Well if [defendant's] story is sufficient to confuse you or to whatever, or if it's just another reason. If, and I hope that is the answer, if twelve people good and true, twelve [w]hite jurors in Randolph County, just doesn't think—." Defendant immediately objected, stating, "Your Honor, please, I object to the racism." The trial court sustained the objection by saying, "Well, let's just—We're not going to have that thing going on." Defendant did not ask for a curative instruction. The prosecutor completed his closing argument, and court adjourned for the day.

The following morning, defense counsel asked the court to revisit the issue: "Judge, during the course of [the prosecutor's] argument yesterday he made some statements that we objected to, and I believe the Court sustained. I was hoping you could amplify just a little bit our objections to what we considered to be inappropriate and racist arguments." The trial court declined to take further action, explaining,

> [the court] sustained the objection to any line of argument that attempted to inject racial division in the argument, and [the court] sustained the objection to [any] type of argument that the

[prosecutor] was about to make which would have constituted a feel for a race-based decision, and I don't know—I ruled for you.

Defendant then moved for a mistrial. The court denied the motion, and the trial proceeded to conclusion.

[1] Defendant contends that the trial court erred when it denied his motion for mistrial. A trial judge "must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C.G.S. § 15A-1061 (1999). The decision to grant or deny such a motion will not be disturbed on appeal unless it is so clearly erroneous as to amount to a manifest abuse of discretion. *State v. McGuire*, 297 N.C. 69, 75, 254 S.E.2d 165, 169-70, *cert. denied*, 444 U.S. 943, 62 L. Ed. 2d 310 (1979). Although the challenged portion of the prosecutor's closing argument is unsettling when read *in vacuo*, an examination of the context in which the comment was made reveals that the district attorney was pursuing a legitimate prosecutorial theory.

Closing argument may properly be based upon the evidence and the inferences drawn from that evidence. *State v. Oliver*, 309 N.C. 326, 357, 307 S.E.2d 304, 324 (1983). Here, the prosecutor argued that defendant's primary motive for killing Spinks was robbery of cash and crack cocaine. However, the prosecutor also contended that defendant had a secondary motivation for the killing: Defendant held in contempt the victim and others with whom he dealt drugs, and their race was a component of that contempt. Although it is improper gratuitously to interject race into a jury argument where race is otherwise irrelevant to the case being tried, argument acknowledging race as a motive or factor in a crime may be entirely appropriate. *State v. Moose*, 310 N.C. 482, 492, 313 S.E.2d 507, 515 (1984) (holding that white defendant's reference to African-American victim as a "damn nigger," along with evidence that victim was seen driving through a white community, sufficient to support jury argument that murder was, in part, racially motivated). Here, the record reveals that when the prosecutor argued to the jury about defendant's secondary motivation, defendant did not object to remarks citing his dismissive perceptions of minorities with whom he dealt. However, when the prosecutor appeared to incorporate the jurors in this argument ("If, and I hope that is the answer, if twelve people good and true, twelve

[w]hite jurors in Randolph County, just doesn't think—"), defendant objected, and the court sustained the objection. The court's denial of defendant's request the next day that the court "amplify" his objection led to the motion for mistrial now before us.

Having reviewed the context in which the prosecutor made the challenged comment, we now consider whether the court abused its discretion in denying defendant's mistrial motion. Abuse of discretion occurs when the trial court's decision is " 'so arbitrary that it could not have been the result of a reasoned decision.' " *State v. Hyde*, 352 N.C. 37, 46, 530 S.E.2d 281, 288 (2000) (quoting *State v. Barts*, 316 N.C. 666, 682, 343 S.E.2d 828, 839 (1986)), *cert. denied*, —— U.S. ——, 148 L. Ed. 2d 775 (2001). The experienced trial judge was presented with a perplexing situation. Because defendant's original objection was immediately made and promptly sustained, the prosecutor never completed his thought. Accordingly, defendant and the court could only speculate whether the prosecutor was undertaking an improper appeal to the racial prejudices of the jury, whether the prosecutor had experienced a slip of the tongue, or whether some other explanation applied. Further instruction by the court calling attention to the prosecutor's unfinished sentence may have done more harm than good. Because the court's decision not to address the issue anew was reasonable, we are unable to conclude that the denial of defendant's subsequent motion for mistrial constituted a manifest abuse of discretion.

[2] Defendant and *amicus* also seek to argue that various other comments in the prosecutor's closing argument violated defendant's due process rights, as guaranteed under the Fourteenth Amendment to the United States Constitution. However, defendant made a contemporaneous objection only to the prosecutor's comment about "twelve [w]hite jurors," and his request the next day for amplification referred only to "inappropriate and racist arguments." When the trial court responded to the request by discussing the remark quoted above, defendant did not direct the court's attention to any other statement made by the prosecutor during his closing argument.

In the absence of an objection to other comments, the standard of review is whether the argument was so grossly improper that the trial court erred in failing to intervene *ex mero motu*. *State v. Golphin*, 352 N.C. 364, 452, 533 S.E.2d 168, 226 (2000), *cert. denied*, —— U.S. ——, 149 L. Ed. 2d 305 (2001). A " 'trial court is not required

**STATE v. DIEHL**

[353 N.C. 433 (2001)]

to intervene *ex mero motu* unless the argument strays so far from the bounds of propriety as to impede defendant's right to a fair trial.' " *State v. Smith*, 351 N.C. 251, 269, 524 S.E.2d 28, 41 (quoting *State v. Atkins*, 349 N.C. 62, 84, 505 S.E.2d 97, 111 (1998), *cert. denied*, 526 U.S. 1147, 143 L. Ed. 2d 1036 (1999)), *cert. denied*, —— U.S. ——, 148 L. Ed. 2d 100 (2000). However, we need not decide whether the trial court erred in failing to intervene because defendant's sole assignment of error pertaining to closing argument was limited to "[w]hether the trial court erred in denying defendant's motion for mistrial after the State's closing argument." The scope of appellate review is limited to those issues raised in an assignment of error set out in the record on appeal, N.C. R. App. P. 10(a), and where "no assignment of error can fairly be considered to encompass" additional issues that a party seeks to raise at the appellate level, those issues are not properly before the reviewing court, *State v. Burton*, 114 N.C. App. 610, 615, 442 S.E.2d 384, 387 (1994). Defendant's single assignment of error pertaining to closing argument does not "direct[] the attention of the appellate court to the particular error about which the question is made," nor does it refer to transcript pages where any questionable comments may be found. N.C. R. App. P. 10(c)(1). "This Court has noted that when the appellant's brief does not comply with the rules by properly setting forth exceptions and assignments of error with reference to the transcript and authorities relied on under each assignment, it is difficult if not impossible to properly determine the appeal." *Steingress v. Steingress*, 350 N.C. 64, 66, 511 S.E.2d 298, 299 (1999). Accordingly, we will not address issues relating to additional remarks made by the prosecutor during his closing argument.

The result in the Court of Appeals did not require it to reach other issues properly preserved by defendant and raised on appeal. Because we now reverse the Court of Appeals' decision as to the only issue it addressed, on remand, that court should also consider defendant's remaining issues.

REVERSED.

Justice MARTIN dissenting.

In a criminal proceeding the "prosecutor may argue the evidence and any inferences to be drawn therefrom." *State v. Oliver*, 309 N.C. 326, 357, 307 S.E.2d 304, 324 (1983). It is well settled, however, that "[t]he Constitution prohibits racially biased prosecutorial argu-

ments." *McCleskey v. Kemp*, 481 U.S. 279, 309 n.30, 95 L. Ed. 2d 262, 289 n.30 (1987). "Nonderogatory references to race are permissible . . . if material to issues in the trial and sufficiently justified to warrant 'the risks inevitably taken when racial matters are injected into any important decision-making.' " *State v. Williams*, 339 N.C. 1, 24, 452 S.E.2d 245, 259 (1994) (quoting *McFarland v. Smith*, 611 F.2d 414, 419 (2d Cir. 1979)), *cert. denied*, 516 U.S. 833, 133 L. Ed. 2d 61 (1995), *overruled on other grounds by State v. Warren*, 347 N.C. 309, 320, 492 S.E.2d 609, 615 (1997), *cert. denied*, 523 U.S. 1109, 140 L. Ed. 2d 818 (1998).

During closing argument the state argued to the jury: "If, and I hope that is the answer, if twelve people good and true, twelve [w]hite jurors . . . ." It is an unremarkable proposition that the state's reference to "twelve *[w]hite jurors*" was not relevant to any issue presented by the evidence or any reasonable inference arising therefrom. Indeed, it is difficult to envision a criminal trial in which the *jurors'* race would constitute a proper matter for argument. Notably, the state acknowledges in brief that "the reference to race might have turned out to be unnecessary."

The majority concludes the state's reference to the *jurors'* race does not constitute reversible error yet concedes the racially based line of argument may have been improper. In any event, the majority does not dispute that the trial judge properly sustained defendant's objection to the state's racial argument. Further, the majority notes that a curative instruction may have done more harm than good. In such circumstances, this Court cannot reasonably ascertain the extent to which the improper argument inflamed the jury with irrelevant racial considerations. Accordingly, in the absence of evidence to the contrary, we should presume the state's reference to the *jurors'* race "so infected the trial with unfairness that it rendered the conviction fundamentally unfair." *State v. Robinson*, 346 N.C. 586, 607, 488 S.E.2d 174, 187 (1997).

I recognize that plain error analysis does not govern our review of jury arguments. *See State v. Davis*, 349 N.C. 1, 29, 506 S.E.2d 455, 470 (1998) (plain error review generally limited to jury instructions and evidentiary rulings), *cert. denied*, 526 U.S. 1161, 144 L. Ed. 2d 219 (1999). Nonetheless, the rationale underlying the doctrine in criminal cases generally, correcting errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings," *United States v. Atkinson*, 297 U.S. 157, 160, 80 L. Ed. 555, 557 (1936), applies with great force here. Public confidence in the administration of justice is

seriously eroded when, as here, irrelevant information about the *jurors'* race is introduced during the state's closing argument.

The *jurors'* race was wholly irrelevant to the jury's consideration of the evidence in reaching a verdict at defendant's trial. I would affirm the decision of the Court of Appeals.